146      55|
32 SC  380|

## COMMONWEALTH v. ELLEN DRASS ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF QUARTER
SESSIONS OF CAMBRIA COUNTY.

Argued October 12, 1891—Decided January 4, 1892.
[To be reported.]

The act of March 23, 1865, P. L. 42, providing that any person who shall
" maliciously or wantonly break or throw down any post and rail or
other fence, erected for the enclosure of land," etc., shall be guilty of a
misdemeanor, etc., does not apply to the tearing down of a fence in the
honest exercise of a supposed legal right.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WIL-
LIAMS, McCOLLUM and MITCHELL, JJ.

No. 4 October Term 1891, Sup. Ct.; court below, No. 56
September Term 1890, Q. S.

On September 4, 1890, the grand jury returned as a true bill
an indictment in a single count, charging that Ellen Drass,
Charles Drass and· others, the defendants, on August 2, 1890,
with force and arms did wilfully, wantonly and maliciously
break and throw down a post and picket fence, erected for the
enclosure of a lot of ground belonging to one Catharine Mc-
Closkey, contrary to the form of the statute, etc. The defend-
ants pleaded not guilty.

At the trial, on September 11, 1890, the testimony for the
commonwealth tended to show that Catharine McCloskey was
the owner of a lot of ground in Gallitzin, on which she resided
with her husband; that, in the summer of 1890, her husband
built a fence intended to enclose the lot; that this fence was
built so as to extend to within eighteen inches of the house of
Ellen Drass, enclosing the greater part of a strip of ground,
about fifteen feet wide, between the McCloskey house and the
Drass house, that had formerly been allowed to lie open; that
on August 2, 1890, about nine o'clock P. M., Ellen Drass and
Charles Drass, appeared in company with the other defendants
whose assistance they had obtained, and tore down a part of
the fence, chopping up the materials; that Mr. McCloskey re-

Statement of Facts.

.built the fence, and on the night of August 12, 1890, between eleven and twelve o'clock, some of the defendants again tore it away; that on each of these occasions the tearing away of the fence was done in a tumultuous and noisy manner, accompanied by threats that it would be torn down as fast as McCloskey could put it up; that in one instance a revolver was drawn by one of the defendants, in connection with the making of such a threat; that seven persons, besides Ellen and Charles Drass, were engaged in the affair on the first occasion, and six persons on the second, a number of whom appeared to be intoxicated.[*] On cross-examination of the commonwealth's witnesses, it appeared that for some time there had been a dispute between Mrs. McCloskey and Mrs. Drass, in regard to the strip of ground between their respective houses, the exact nature of which did not clearly appear, though the testimony seemed to indicate that it related to the ownership of that ground.

At the close of the commonwealth's case, the district attorney stated to the court that he did not ask for the conviction of any of the defendants except Mrs. Drass, and two others who were members of her family.

Ellen Drass having taken the stand as a witness, defendants' counsel offered to prove by her that "the defendants did not tear or take down the fence in question wantonly, nor wilfully, nor maliciously; but in justification of their right to go out and in on their own property."

Objected to, by the district attorney.

By the court: Objection sustained; offer excluded; exception.[1]

The defendants then proposed to prove "by the witness on the stand and other witnesses, that they are defendants in the criminal court and have a right to be heard to justify the defendants from the charge in the indictment."

The district attorney objected that the evidence of justification could not be admitted, the defendants not undertaking to deny the offence as made out by the commonwealth's witnesses; in fact, admitting it by their offer to justify.

By the court: Objection sustained and offer refused; exception.[2]

---

[*] Observe, the indictment charged only the malicious removal of the fence.

Charge of Court below.

The testimony being closed, the court JOHNSTON, P. J., citing the act of March 23, 1865, P. L. 42, charged the jury in part as follows:

[This act of assembly was passed to meet precisely such cases as this, and to keep peace among the good citizens of this commonwealth. There have frequently been unseemly riots and even bloodshed on this very question; and it is to prevent scenes of this kind that all parties are required to go into the civil courts of this commonwealth to try the rights of the parties.] [3]

The prosecutor in this case built a fence enclosing what he claims to be his boundary around his lot. [It was peaceably and quietly built, and no objection or pretence of objection was made to the building of the fence.] [4] It was constructed at times when he was released from his other labors, and it took some time for its construction, as the witnesses have testified; [and when it was completed, without any objection or remonstrance of any kind, or any resort to any civil proceedings to prevent him as a trespasser, or any other way, in the night-time,—one of the trespasses at 9 o'clock at night or afterwards, and the other at 11 o'clock, a force of men, in one case seven and in the other eight, appeared upon the ground and the fence was destroyed, removed, torn down. This is an express violation of the act of assembly that I have read.] [5]

I do not pretend to say that this prosecutor, Mr. McCloskey, was on the true line of his property; but that question is not a question for the Court of Quarter Sessions, which is a court only for the purpose of punishing crime. He may have been mistaken for all that we know. If he was, there are the fullest means of rectifying that mistake, in the civil courts of this commonwealth. The purpose of the law is to prevent men, or women either, from taking the law into their own hands. Supposing that this prosecutor, when an effort was made to tear down this fence, had rallied a force to protect it, there might have been an assault and battery, perhaps a riot and bloodshed; and hence the necessity of the act, to punish in the criminal courts acts of this kind, where parties recklessly and rashly take the law into their own hands, and commit acts that are made offences by the act of assembly, instead of waiting for a peaceable decision in the civil courts.

Charge of Court below.

This defendant, [Mrs. Drass, may have thought she had some grievance. We cannot say she had not; but she cannot redress them by the strong arm of force, aided by a crowd of men in the night. That is not the proper way for her to obtain her rights if she has sustained any wrong. The main offence is clearly made out.] [6] The defendants offer to justify here, by some claim of title that they have; but we cannot try titles in the Quarter Sessions. We cannot go into this question here at all. We have another court, another jurisdiction, that would quietly and patiently hear these parties in another tribunal; but here is a plain and palpable infraction of the law, and courts and juries have no course but to find the defendants guilty; and having found them guilty, the court may, in passing sentence, consider such mitigating circumstances as are presented to it.

On the plain facts in this case, the offence here charged was committed; and it cannot be justified by the claim that this fence was in the wrong place. That would involve a land trial, where land titles are not tried, in the Court of Quarter Sessions. The law aims to prevent such reckless acts performed in the night time; and if the prosecutor had stood in defence of his property and raised a crowd to oppose the taking away of the fence, the effort to take it away would have been followed, in all probability, by a much more serious offence. [We have no remedy in this case but to direct that the case is made out, and that the defence has failed entirely to show any reason why these parties should not be convicted. Your verdict, under the circumstances, must necessarily be for the commonwealth, because there is no reasonable doubt or any question here in regard to the commission of the act itself.] [7] The prosecution is not pressed against those who were merely employees of these parties. . . . .

—The jury returned a verdict finding Ellen Drass and Charles Drass guilty as indicted, and the other defendants not guilty. A motion for a new trial having been overruled, the court sentenced the defendants, Ellen Drass and Charles Drass, to pay a fine of ten dollars, one half thereof to be paid to the prosecutrix, Catharine McCloskey; and to pay the costs of prosecution. Thereupon, having obtained a special allocatur, said defendants took this appeal assigning for error:

Opinion of the Court.

1, 2. The refusal of defendants' offers.[1] [2]

3–7. The parts of the charge embraced in [ ][3 to 7]

*Mr. George M. Reade*, for the appellants :

1. A nuisance, whether public or private may be abated by the party aggrieved, so that it be done peaceably and without riot : Rung v. Shoneberger, 2 W. 23, 26, 27 ; this right resting upon the same grounds as the right of self defence : Hicks v. Dern, 42 N. Y. 47 ; Brown v. Perkins, 78 Mass. 101 ; Meeker v. VanRensselaer, 15 Wend. 397 ; Pierce v. Dart, 7 Cow. 609, 611 ; Inhabitants v. McCullough, 10 Mass. 70 ; Lancaster Turnpike Co. v. Rogers, 2 Pa. 114, 115 ; Brake v. Crider, 107 Pa. 210 ; Fields v. Stokley, 99 Pa. 306 ; Manhattan Ferry Co. v. VanKeuren, 23 N. J. Eq. 251.

2. For the purposes of this hearing, it must be admitted that the testimony offered would have shown a justification ; and the defendants had the right to require the jury to pass upon their whole case : Hutchison v. Commonwealth, 82 Pa. 479. No criminal intent, therefore, can be imputed to the defendants, the fence having been removed under a claim of right : Commonwealth v. Cole, 26 Pa. 187 ; Schenley v. Commonwealth, 36 Pa. 29, 59 ; Pittsburgh etc. Ry. Co. v. Dunn, 56 Pa. 284 ; Jenkins v. Fowler, 24 Pa. 308 ; Smith v. Johnson, 76 Pa. 191 ; Commonwealth v. Bradney, 126 Pa. 199.

*Mr. Francis J. O'Connor*, District Attorney, for the appellee :

The defendants were properly indicted under the act of March 23, 1865, P L. 42. The purpose of that act was to prevent riot, breach of the peace, and bloodshed. Such conduct as was proved against the defendants in the present case, was certainly malicious and unjustifiable. The defendants had no right to take the law into their own hands, and in doing so they violated the provisions of the statute.

OPINION, MR. CHIEF JUSTICE PAXSON :

The learned judge below evidently mistook what was, at most, a trespass, for malicious mischief. The defendants were indicted under the act of March 23, 1865, which provides :

" That if any person or persons, from and after the passage of this act, shall maliciously or wantonly break or throw down

any post and rail or other fence erected for the enclosure of land, or shall carry away, break, or destroy any post, rail, or other material of which such fence was built, enclosing any lots or fields within the commonwealth, such person or persons so offending shall be guilty of a misdemeanor," etc.

Upon the trial below, the defendant Ellen Drass being on the stand, the defence offered to prove by her "that they the defendants did not tear or take down the fence wantonly, nor wilfully, nor maliciously; but in justification of their right to go out and in on their own property." The second specification discloses a somewhat similar offer. The learned district attorney objected to the admission of this evidence, on the ground "that evidence of justification cannot be admitted, the defendants not undertaking to deny the offence as made out by the commonwealth's witnesses; in fact, admitting it by their offer to justify." The learned judge sustained the objection.

I do not understand the offer to admit the commonwealth's case. It admits the taking down of the fence, but it does not admit that it was done "maliciously or wantonly," which was the gist of the commonwealth's case. The mere act of tearing down a fence is not necessarily malicious or wanton. It may be done in the honest exercise of a right. Surely, if some one erects a fence which denies or obstructs my entrance to my house or grounds, I may remove it without subjecting myself to an indictment in the Quarter Sessions. Such an act lacks every element of malice or wantonness. Such appear to have been the facts in this case; at least, it was so alleged by the defendants, and they were entitled to make such proof.

We think it was error to instruct the jury that "this act of assembly was passed to meet precisely such cases as this," etc. The case should have been submitted to the jury to find whether the act was malicious and wanton, or merely done in the exercise of a supposed legal right. In the one case, it is a crime; in the other, a trespass at most.

All of the specifications of error are sustained

> Judgment reversed, and a venire facias de novo awarded.