## Commonwealth *v.* Pacito, Appellant.

*Criminal law—Murder — Evidence — Malice — Premeditation — Insanity.*

1. A conviction of murder of the first degree will be sustained where the evidence, apart from any proof of the prisoner's insanity, shows that the prisoner went in the evening to the house in which the murdered man was eating his supper, called him to the front door, drew a revolver, fired three shots all of which took effect, resulting in almost instant death, and that he then ran off, and while attempting to make his escape, threw his revolver into a graveyard.

2. Where on the trial of an indictment for murder the trial judge in his charge first calls the attention of the jury to the contentions of the commonwealth, and immediately explains that the case of the commonwealth must be considered in connection with the defense of insanity set up by the prisoner, and then takes up the contentions of the prisoner, what is said in the charge relating to the commonwealth's case must be considered in connection with the instructions as to insanity and the instructions as to the prisoner's contentions.

3. Where, upon the trial of an indictment for murder, the charge covers the general rules of law applicable to the defense of insanity, an omission to charge specifically on the subject of delusions, with which the prisoner is alleged to have been afflicted, is not ground for reversing a conviction, where the record shows that no request was made at the trial for more definite instructions as to such delusions.

*Criminal law—Murder—Degree of murder.*

4. On the trial of an indictment for murder the trial judge cannot be charged with insufficiently instructing the jury as to the degrees, where he points out the distinction between the two degrees and specifically states that the burden is upon the commonwealth to show

a deliberate intent to take life before the crime could be raised from murder of the second to the first degree.

5. Under such circumstances the failure of the trial judge, when no request is made to so charge, to instruct the jury that the killing having been proved, the law presumes a murder no higher than of the second degree, is not reversible error. The facts and not the presumptions control.

Argued Oct. 3, 1910. Appeal, No. 213, Jan. T., 1910, by defendant, from judgment of O. & T. Phila. Co., Nov. Sessions, 1909, No. 273, on verdict of guilty of murder of the first degree in case of Commonwealth v. Antonio Pacito. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Indictment for murder. Before RALSTON, J.

The court charged in part as follows:

In the first place, what was the crime committed in this case? Four of the witnesses who have testified saw the shooting. They were Maria Silvia, Joseph Cosky, Sebastian Polito and Tony Bonella. These witnesses, who were either in the house or in the street near the house, testified that they saw the prisoner fire the shots which killed the deceased. Mrs. Silvia testified that she was in the kitchen of the house, where the deceased had been sitting, and that the prisoner called to the deceased, who went into the doorway or into the front room when the prisoner called him. From her testimony and that of the other witnesses who saw the shooting, it appears that the prisoner was standing in the front doorway, and that when the deceased came out from the kitchen he shot him. They heard three shots, and each saw one or more of the shots fired. There can, I suppose, be no reasonable doubt that the deceased came to his death by the act of the prisoner.

That crime, gentlemen, would be murder. It is not necessary for me to speak of other crimes, because we

have to do with no crime but murder. A killing under such circumstances would undoubtedly be murder, and it is the duty of a jury in a trial for murder to determine whether it is murder of the first degree or of the second degree. As to the definition of these degrees of murder, I may say to you that in this case, if the crime is not murder of the first degree, it is murder of the second degree, and, if you do not find it to be murder of the first degree, you must necessarily, under the facts in this case, find it to be murder of the second degree.

Murder of the first degree is a willful, deliberate and premeditated killing. This is the most heinous crime known. to our law. It means that the prisoner has had time to, and has made up his mind to kill the deceased, and that he has killed him in pursuance of that determination. As you know from everyday experience, it takes a very short time to form an intention. An intention may be formed almost instantaneously, and it matters not how long the prisoner may have had this intention; if he formed it almost immediately before and did intend to kill the deceased, and shot him with that purpose, it is murder of the first degree.

In determining what the intention of the prisoner was, you must determine it as you would any other fact in your ordinary, everyday experience in life. In determining a man's intention when he does a certain act, you may consider a declaration of his intention made by himself, if you have any evidence of such declaration. For instance, a man says that he is going to kill another and afterwards does it; from that you would conclude that he intended to kill the other person. There is no such declaration in this case to guide you as to the intention of the prisoner. Ordinarily, you must judge a man's intentions by his actions. Suppose you had been present, and had seen this deed committed as it has been described to you from the witness stand. Suppose that you had seen the prisoner fire a revolver into the forehead, or side of the head of the deceased, so that the bullet penetrated

the brain and was found in the back of the head, and then fire another shot striking him in the chest under the collar bone, on the left-hand side, the bullet passing through to the shoulder blade in the back, and then fire a third shot when, as I think one witness who saw it testified, the deceased had fallen, which shot penetrated his buttock, what would you say was the intention of the man firing those shots? The third shot was probably a mere flesh wound, and although it may have done but little harm, you have the fact that he fired a third shot. If you had seen that, what would you conclude that he intended to do? What would be the result, in ordinary experience, of such an act? What would almost necessarily follow from shooting a man with a thirty-eight caliber revolver through the head, through the body, and then firing a third shot into his body when he was on the ground? What would be the almost inevitable consequence of such an act? In ordinary experience, it would result in the man's death. If you saw a man commit such an act, would you be satisfied that he intended to kill the deceased—in short, that he intended the natural, probable and ordinary consequence of his action? From that evidence, if you find that the prisoner intended to kill the deceased and did so in pursuance of that intent, then he would be guilty of murder of the first degree. There is no dispute as to that testimony. It is uncontradicted.

Verdict of guilty of murder of the first degree.

*Errors assigned* amongst others were (2) portion of charge as above, quoting it; (4) because the learned court below erred in not referring in any portion of his charge to the specific form of insanity, to wit, delusional insanity, which the testimony on behalf of defendant tended to show might have existed in the defendant's mind at the time of the shooting; (6) because the learned judge of the court below erred in not stating to the jury in his charge that the presumption of law in a case of murder

rises no higher than a presumption that the crime is murder of the second degree.

*Chester N. Farr, Jr.,* with him *Michael A. Spatola,* for appellant.

*Joseph H. Taulane,* assistant district attorney, with him *Samuel P. Rotan,* district attorney, for appellee.

OPINION BY MR. JUSTICE ELKIN, January 3, 1911:

Appellant shot and killed the deceased for whose murder he was convicted. Pacito in the evening came to the boarding house in which Rizzi, the murdered man, was eating his supper; called him to the front door, drew a revolver and fired three shots, all of which took effect, resulting in almost instant death. He then ran away and while attempting to make his escape threw the revolver into a graveyard. The manner of the shooting and the acts of appellant indicate malice, deliberation and premeditation. The killing was willful and brutal and unless excused by the plea of insanity set up as a defense, the crime committed was clearly murder of the first degree. The jury so found and the evidence is ample to sustain the verdict. It must be sustained unless there was reversible error in the submission of the case. The first assignment is without substantial merit and need not be discussed. The admission of the evidence complained of could not have done appellant any harm and certainly does not constitute reversible error. The second assignment relates to certain portions of the charge of the trial judge. It is argued that the language used was tantamount to binding instructions for a verdict of first degree murder and that it was in the nature of a comment upon the failure of defendant to take the stand as a witness. We do not so read nor understand the language used. To give it such an interpretation it would be necessary to read into the charge words not used or to give the words used a meaning not intended. It would also mean

that other parts of the charge must be disregarded and that the particular portions complained of should be taken as the final instruction to the jury. The court could not sum up both sides of the case at the same time and very properly began by calling the attention of the jury to the contentions of the commonwealth. This was followed almost immediately by explaining to the jury that what had been stated relative to the case of the commonwealth depended upon the fact whether the accused was sane or insane at the time of the shooting. All of which was entirely correct. The facts connected with the shooting were undisputed and appellant either committed a deliberate murder or did not commit any crime because being insane he did not know what he was doing. These questions were all submitted to the jury in the course of the whole charge.

The third and fourth assignments relate to the charge of the court on the question of insanity. It is not what the court said that is made the subject of complaint but what was left unsaid. The error alleged is that the trial judge failed to instruct the jury as to delusional insanity which was the specific form of mania relied on as a defense. In the charge insanity was said to be divisible into three general kinds or forms, that is, where the accused party did not know what he was doing; that he did not know the difference between right and wrong; or, that he was moved by an insane impulse, impossible of resistance, to commit the act. All that was said on the general subject of insanity, was clearly within the rule as laid down in our cases, but it is true no reference was made to the alleged fact that the defendant was afflicted with delusions of persecution leading him to imagine that many individuals were endeavoring to kill him and that as a result of these delusions he believed the deceased was about to kill him on the day of the shooting. This was the defense set up and several witnesses testified to facts from which such inferences might be drawn. But appellant had the full benefit of this defense in the argument

of his counsel to the jury, and the learned trial judge instructed them that if the killing was the result of an insane impulse there should be an acquittal. If more definite instructions were required it was the duty of counsel to call the attention of the court to the matter by points or requests. A point was submitted covering the particular matter complained of but it was withdrawn after the delivery of the charge. This indicates that at the time of the trial counsel for appellant was satisfied with the instructions given the jury, otherwise he would have insisted on having his points answered. While it may be stated as a general rule that it is the duty of the trial judge to charge fully upon the law as applicable to the facts, and this without regard to the points presented by counsel, yet when the instructions cover the general rules of law applicable to the case, the omission to charge upon a particular point not called to the attention of the court is not error: McMeen v. Com., 114 Pa. 300; Com. v. Caraffa, 222 Pa. 297. Failure to elaborate questions of law upon which the court has charged is not error when no points are submitted or requests made asking for more definite instructions.

The sixth assignment raises the question whether error was committed in not specifically charging that the commonwealth having proved the killing, the law presumes the homicide to be murder, but that this presumption rises no higher than murder of the second degree. In homicide cases the burden is on the commonwealth to prove the necessary facts to raise the degree of the crime from murder of the second degree to murder of the first degree. In the case at bar the facts shown by the testimony are clearly sufficient for this purpose, if the appellant was of sane mind and knew what he was doing. The learned trial judge did charge that, "in order to raise the crime of murder from the second to the first degree, it is the duty of the commonwealth to convince you beyond a reasonable doubt that there was a willful, deliberate and premeditated killing." This followed more definite

instructions as to what constituted murder of the first degree and murder of the second degree to which no objection is made. With a charge pointing out clearly the distinction between the two degrees of murder and an instruction that the burden was on the commonwealth to show a deliberate intent to take life before the crime could be raised from murder of the second to the first degree, the jury had an intelligent understanding of the law applicable to the facts of the case, and this is all that is required. Under such circumstances failure of the trial judge, when no request is made to so charge, to instruct the jury that the killing having been proved the law presumes a murder no higher than of the second degree is not reversible error. The facts and not the presumptions control. The remaining assignments are technical and without substantial merit.

A careful review of the whole record has convinced us that the appellant had a fair and impartial trial. He was represented by able and experienced counsel who defended him with skill and intelligence. His cause has been argued with marked ability here but notwithstanding all that has been pressed upon us by his counsel we fail to discover any error that would warrant a reversal with a venire. The facts were for the jury and the verdict is amply sustained by the evidence.

Judgment affirmed and record remitted in order that execution may be had according to law.