## Commonwealth *v.* Newson, Appellant.

*Criminal law—Murder—Words and acts of provocation—Deadly weapon—Wound in vital part.*

1. To reduce an intentional blow, resulting in death, to voluntary manslaughter, there must be sufficient cause of provocation, and a state of rage or passion without time to cool, placing the prisoner beyond control of his reason, and suddenly impelling him to the deed.

2. Where one is killed by a wound in a vital part, administered by a deadly weapon, no words of provocation, reproach, abuse or slight assault are provocations sufficient to free the party killing from the guilt of murder.

*Criminal law — Murder — Charge — Evidence —Degrees—Manslaughter — Premeditation — Reputation — Refusal of point —Request for further instructions.*

3. Where there is no evidence other than deceased's language to reduce the crime to voluntary manslaughter, and where the evidence clearly negatives the crime of manslaughter, the trial judge is under no obligation to charge the jury on that grade of homicide.

4. Where the court charges fully on the grades of homicide and their elements, and a more extended definition of premeditation is desired, counsel should request it.

5. Where a point contains matters dealing with reputation which cannot be affirmed, the prisoner cannot complain, if the point is refused.

6. If the charge as to the law relating to reputation was deemed insufficient, a request to amplify should have been made.

Argued Jan. 3, 1923. Appeal, No. 408, Jan. T., 1922, by defendant, from judgment of O. & T., Phila. Co., Oct.

T., 1921, No. 736, on verdict of murder in the first degree, in case of Commonwealth v. Clarence Newson.  Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.  Affirmed.

Indictment for murder.  Before PATTERSON, P. J.

The opinion of the Supreme Court states the facts.

Verdict of murder of the first degree on which sentence was passed.  Defendant appealed.

*Errors assigned* were (1-3) refusal of defendant's points, quoting record.

*John Martin Doyle,* with him *Michael J. McEnery,* for appellant.—The words and actions of the deceased woman were an adequate provocation to be submitted to the jury as the basis for a finding of voluntary manslaughter: Com. v. Drum, 58 Pa. 17; Com. v. Colandro, 231 Pa. 343; Com. v. Paese, 220 Pa. 371; Penna. v. Bell, 1 Addison, 156.

In certain cases from other jurisdictions, in well-considered opinions, a provocation by words has been held adequate: State v. Grugin, 147 Mo. 39; Reginia v. Rothwell, 12 Cox C. C. 145.

The charge of the learned trial judge did not adequately explain to the jury the meaning of premeditation and the bearing of the provocation on premeditation in this case: Com. v. Drum, 58 Pa. 9; Jones v. Com., 75 Pa. 403.

The charge on the subject of good reputation was inadequate.

*Samuel P. Rotan,* District Attorney, and *Maurice J. Speiser,* Assistant District Attorney, for appellee.—The evidence was sufficient to sustain the verdict: Com. v. Drum, 58 Pa. 1; Com. v. Russogulo, 263 Pa. 93.

Where the evidence clearly negatives the crime of manslaughter, the judge is under no obligation to charge the

jury on that grade of homicide: Com. v. Gibson, 211 Pa.
546; Brown v. Com. 76 Pa. 319.

OPINION BY MR. JUSTICE KEPHART, March 5, 1923:

Counsel for appellant, in their brief, state: "Let it be
said that this was a fair trial in the best sense of the
word.......The defendant has no complaint to make of
the treatment given to his case." He was convicted of
murder in the first degree, and the evidence discloses all
the ingredients of such murder. The assignments of er-
ror complain of the charge of the court below in denying
several points submitted. The first concerns a request
for instruction on voluntary manslaughter. It is based
on the language of the deceased, which, it is urged, gives
rise to adequate provocation, sufficient to arouse one's
passions, causing him to be incapable of cool reflection.
Judge AGNEW, in Commonwealth v. Drum, 58 Pa. 9, 17,
said, "To reduce an intentional blow,......resulting in
death, to voluntary manslaughter, there must be suffi-
cient cause of provocation, and a state of rage or passion,
without time to cool, placing the prisoner beyond the
control of his reason, and suddenly impelling him to the
deed." See also Commonwealth v. Colandro, 231 Pa.
343, 351. "What is sufficient provocation......has not
been exactly defined, and is probably incapable of exact
definition, for it must vary with the myriad shifting cir-
cumstances of men's temper and quarrels......No
words nor mere gestures, however false, foul or insult-
ing, will free a party killing from the guilt of murder."
Commonwealth v. Paese, 220 Pa. 371, 373, 374. Not-
withstanding this oft repeated statement of the law, we
are asked to say, in this case, on the authority of State
v. Grugin, 147 Missouri 39, that, under certain circum-
stances, spoken words give rise to sufficient provocation.

This defendant and the deceased had at times lived to-
gether as man and wife. On the evening of the slaying,
defendant was endeavoring to induce deceased, who had
left him, to return and live with him. They had been

walking through the streets for some time, engaged in conversation; defendant accused deceased of not treating him right. This was denied, followed by the statement that she did not want him, he was making trouble for her; she only wanted his money; she admitted she had not been true to him, and had tried to dope him by use of an offensive potion in his meals, as defendant states, common among colored people. "Q. What took place then? A. She pulled this razor and I snatched it and shot her with my right hand." It is the remark concerning the offensive potion which counsel claim caused provocation sufficient to unseat defendant's mind. In the Missouri case, defendant's daughter had been ravished; he had gone to the alleged ravisher, and to his question as to why he had done it, made reply he would do as he "damn pleased." The Supreme Court of that state held the insolent and defiant reply, if believed by the jury, was sufficient to generate reasonable provocation so as to produce hot blood, lowering the grade of murder to manslaughter. In this and other states the rule first above announced has been rigidly followed, and for a good reason. In civilized communities, in the majority of actions, the human mind is subject to discipline and control. It must be so, otherwise laws will be useless, and the safety of individuals will depend on their ability to cope with their adversaries. To restrain strife and protect human life, the law will not excuse acts based on words, insults and the like. Commonwealth v. Paese, supra. All members of the public know that any impingement of the rule, resulting in death, will be met by the extreme penalty. Man, then, is taught to restrain himself and to guard his actions when anger besets him, not only through the force of education, but by the law's control exerted by the rule in question. It is from this mental deterrent that violence, aroused to a high pitch of passion by spoken words, is arrested. If we remove the force of education and the law's restraint, we make life insecure by further excusing homicide of the first degree;

we place no limitation on the character or force of words that would be sufficient to cause this provocation; the jury must approximate the degree through the effect of the words used. It needs little argument to show how wholly unsatisfactory this result would be, placing in the hands of reckless and often evilly disposed persons another avenue through which they may escape the consequences of their acts. Then, to clearly appraise the words used, the jury would have to consider not only the circumstances under which used, but the environment or mode of life of those who used them. We see no reason to depart from the rule recently reaffirmed in Commonwealth v. Russogulo, 263 Pa. 93, 105, that where one is killed by a wound in a vital part, administered with a deadly weapon, "no words of profanity, reproach, abuse or slight assault are provocations sufficient to free the party killing from the guilt of murder."

If defendant was aggrieved because the deceased would not live with him, and had improper relations with another, he knew of this misconduct before he met her that evening; she was at his room Saturday night previous, where they had sexual intercourse, and defendant did not seem to be much perturbed by this situation.

There was no evidence other than deceased's language to reduce the crime to voluntary manslaughter, and, where the evidence clearly negatives the crime of manslaughter, the judge is under no obligation to charge the jury on that grade of homicide. Commonwealth v. Gibson, 211 Pa. 546, 548; Brown v. Commonwealth, 76 Pa. 319, 339; Commonwealth v. Morrison, 266 Pa. 223, 230. Defendant sets up, to justify the killing, that deceased drew a razor; but he immediately disarmed her and then fired three times.

The second assignment complains that the court below did not adequately explain to the jury the meaning of premeditation, and the bearing provocation from spoken words had on premeditation. The court below charged fully on the grades of homicide and their elements. If

a more extended definition of premeditation was desired, counsel should have requested it. The point refused was a repetition of the first point just discussed, endeavoring, however, to use the words as sufficient to raise a reasonable doubt in the minds of the jury whether the prisoner acted with deliberation. The effect of the instruction involved in the first assignment was to reduce the offense to manslaughter; under the instruction covered by the second assignment the doubt suggested from the words might lead to an acquittal. The court committed no error in refusing the point, especially as it judicially determined the effect of such words.

The last assignment charges error in refusing the third point, dealing with evidence of reputation. There were matters in it which could not be affirmed. The court below did charge on the law relating to evidence of reputation, and, if it was insufficient, a request to amplify it should have been made. The point contains conclusions not borne out by the evidence, in some respects is contradictory to it, and embodies an argument as to the merit of the position assumed, the establishment of which, by judicial utterance from the bench, would have been prejudicial to the Commonwealth's case.

Defendant was carefully tried. The assignments of error are without merit and they are accordingly overruled.

The judgment of the court below is affirmed and the record is remitted for the purpose of execution.