Commonwealth *v.* Hopkins, Appellant.

562

Argued October 11, 1949. Before RHODES, P. J., HIRT, DITHRICH, ROSS, ARNOLD and FINE, JJ. (RENO, J., absent).

*Thomas D. McBride,* for appellant.

*George P. Williams, 3rd,* Assistant Deputy Attorney General, with him *John C. Phillips,* Deputy Attorney General and *T. McKeen Chidsey,* Attorney General, for appellee.

OPINION BY ARNOLD, J., November 15, 1949:

Defendant, the chief assistant fire marshal of the City of Philadelphia, was indicted in twenty-six counts for extortion by a public officer under §318 of The Penal Code of 1939, 18 PS §4318. The jury acquitted him on fifteen counts and found him guilty on eleven. Defendant appeals from judgments of sentence.

The office of Fire Marshal in the City of Philadelphia was created by the Act of 1911, P. L. 705, 53 PS §3591 et seq., which also provided for the appointment of assistant fire marshals, "one of the said assistants to be designated as chief assistant."

Under the Act of 1901, P. L. 361, 53 PS §3542, and various ordinances of the City of Philadelphia,[1] licenses for the installation of high explosive (here, fuel oil) equipment, are granted by the Mayor, upon applications which must first be approved by the Fire Marshal's office. The fee for the permit is paid to the city treasurer through the Mayor's office.

No fees of any kind are authorized to be taken by the Fire Marshal for the approval of the application, which contains plans, blueprints, etc., of the proposed installation, such as fuel oil tanks.

The evidence of the Commonwealth, accepted by the jury, showed that the defendant, the chief assistant fire marshal, before approving applications for permits for the installation of tanks for fuel oil, took from the applicant a sum of money amounting in nearly all instances to one cent per gallon of the storage capacity of the tank or tanks,—which was the extortion charged in the various counts. Thus the applicant paid a fee for the permit through the Mayor's office, but as a means of getting his application approved by the Fire Marshal (without which the Mayor could not issue the license) he paid six times the amount of the actual permit fee.

---

[1] April 2, 1901, page 118; December 30, 1916, page 699; January 4, 1935, page 4.

Generally the applicant was told by the defendant that to get his official approval would cost the applicant one cent for each gallon of tank capacity. The applicant laid the money on defendant's desk, sometimes inclosed in an envelope. If the witnesses for the Commonwealth told the truth, the defendant undoubtedly committed the extortions. Beyond any question the evidence amply sustains the verdicts, and indeed the defendant-appellant does not contend to the contrary.

Defendant did not contend that he was not a "public officer,"—as indeed he undoubtedly was. See *Commonwealth v. Gallagher*, 165 Pa. Superior Ct. 553, 69 A. 2d 432. He did not contend that he accepted money by virtue of some custom, ordinance or practice, nor that he believed he was entitled to the fee. He merely denied that he ever took any extortion money, or that it was offered to him.

The convictions must therefore stand unless errors were committed by the court below requiring a reversal. There were not such errors and the judgments will be affirmed.

I. We cannot sustain appellant's contention that each of the persons from whom the money was extorted was an accomplice of the defendant, who was entitled to a charge (requested and refused) on the quality of accomplice testimony.

By the great weight of authority the test of determining if one is an accomplice of the accused on trial is whether or not he could be indicted and punished for the crime with which the accused is charged. One who could not be convicted of the crime with which the accused is charged is not an accomplice, regardless of how culpable his conduct may have been. See 22 C. J. S., Criminal Law, §786, page 1334; 56 A. L. R. 407, 412; 111 A. L. R. 1393. In Underhill on Criminal Evidence (4th ed.) §150, page 222, the rule is thus stated: "One test as to whether or not a person is an accomplice is held to be

whether there is sufficient evidence to indict for the crime upon which the accused is standing trial"; citing cases from Arkansas, California, Delaware, Georgia, Idaho, Illinois, Iowa, Kentucky, Minnesota, Montana, New Mexico, Oklahoma, Oregon, Tennessee and Texas. To these must be added Utah (*State v. Gleason,* 86 Utah 26, 40 Pac. 2d 222) and Ohio (*State v. Ruskin,* 117 Ohio St. 426, 159 N. E. 568). We followed the weight of authority in *Commonwealth v. Billingsley,* 160 Pa. Superior Ct. 140, 50 A. 2d 703, aff. 357 Pa. 378, where the defendant was charged with attempted subornation of perjury of one House, who had testified falsely at the defendant's instance in a civil action, but who withdrew and corrected his testimony. There the only evidence of defendant's attempted subornation of House came from the uncorroborated testimony of the latter. Appellant-defendant claimed that House was an accomplice. We said (page 145) : ". . . the suborned and the suborner . . . are not accomplices as to the procurement or suborning of the witness to commit perjury, because a suborner cannot be guilty of suborning himself [citing authorities]." [2] The patent culpability of House (in attempting perjury) did not make him an accomplice of Billingsley as to the latter's attempted subornation of House.

---

[2] A girl under sixteen is not an accomplice of a defendant charged with consensual rape upon her: *Commonwealth v. Feist,* 50 Pa. Superior Ct. 152; nor is an abortion victim an accomplice: *Commonwealth v. Bricker,* 74 Pa. Superior Ct. 234; *Commonwelth v. Sierakowski,* 154 Pa. Superior Ct. 321, 35 A. 2d 790. The victim of one charged with violation of the White Slave Act is not an accomplice: *U. S. v. Sorrentino et al.,* 78 F. Supp. 425. An alien unlawfully entering the United States is not an accomplice of one unlawfully bringing the alien into the country: *Emmanuel v. U. S.,* 24 Fed. 2d 905, certiorari denied, 278 U. S. 643; *Campbell v. U. S.,* 47 Fed. 2d 70; a bawdy house inmate who relayed defendant's inquiries to the proprietress is not an accomplice of a defendant transporting a girl for purposes of prostitution: *Commonwealth v. Fusci,* 153 Pa. Superior Ct. 617, 35 A. 2d 93.

II. The court excluded defendant's offer that he approved applications for installations made by various *other* people without exacting a fee. The fact that the defendant on other occasions did not commit a crime is immaterial; but appellant contends that the evidence should have been received as negativing scheme, plan or intent evidence of the Commonwealth. There was no such "scheme" evidence. Commonwealth's evidence was confined to the proof of extortion from a named applicant on a given date as laid in the various counts of the indictment. There was no proof by the Commonwealth of *other* crimes, which is the case where evidence is offered to show "scheme."

III. Complaint is made of the court's charge. The statute (§318 of The Penal Code of 1939, 18 PS §4318) makes it a crime for a public officer "wilfully and fraudulently" to receive or take a reward, etc., and complaint is made that the court did not sufficiently define "the elements of the crime of extortion,"—specifically that the words "wilfully and fraudulently" were not properly defined. After the court's charge defendant took a number of exceptions, among which: "To your Honor's definition of extortion" (356a). We think the charge is unimpeachable, the court stating (335a): "With respect to the words wilfully and fraudulently, the law is this. If the taking is intentional, it is wilful; and the wilful taking of money by a public officer in plain violation of the Act is at least a fraud on government—on the organized society that he voluntarily undertook to serve honestly and in accordance with law." As to the word "wilfully" see *Commonwealth v. Robinson*, 305 Pa. 302, 308, 309, 157 A. 689. There was no request by the defendant for any further charge as to the word "fraudulently." If the defendant intentionally took the money it was wilful; if he thus took the money as a condition to the approval of the application, it was fraudulent. In some fourteen distinct instances the jury was in-

structed that the defendant was not guilty of extortion *merely* by reason of his taking the money, but that the Commonwealth was required to show that the defendant took money *for the performance of his official duties.* If he took money for the performance of such duties, it makes no difference whether it was sought to be disguised as a tip or gratuity. It is unimportant whether the money was actually paid to him before or after the approval of the application, if, as the jury found, the arrangement was that it was to be paid for the performance of the duties of his station.

IV. Lastly, appellant contends that the judgments must be arrested, for reasons totally devoid of either justice or substance. Section 23 of Article V of the Constitution of Pennsylvania provides: "The style of all process shall be 'The Commonwealth of Pennsylvania.' All prosecutions shall be carried on in the name and by the authority of the Commonwealth of Pennsylvania, and conclude 'against the peace and dignity of the same.'" When the bill of indictment was returned by the grand jury as a true bill, each count concluded with the words, "contrary to the form of the Act of Assembly in such case made and provided and against the peace and dignity of the Commonwealth of Pennsylvania." Thus the true bill exactly conformed to the constitutional provision.

During the trial defendant moved for the Commonwealth to elect whether it was proceeding on common law extortion or statutory extortion under §318 of The Penal Code of 1939. Thereafter the Commonwealth asked leave to amend by striking out of each count the words, "against the peace and dignity of the Commonwealth,"—showing that the proceeding was under the statute. Although defendant did not agree thereto, it was stated that there was no objection to the striking of those words, and the court gave leave to the Commonwealth thus to amend. Appellant urges that the

indictment thereby became defective because the constitutional provision for the conclusion is mandatory. It may well be doubted that this is a mandatory requirement of the Constitution,—rather one would think that it is directory. This is not necessary to be decided. If the words of the Constitution *make mandatory* such a conclusion to the indictment, it follows that when the grand jury returned a true bill with the so-called "mandatory" words therein, no court, at any place or any time, had the power to delete these words. Even if the court undertook to delete them, the court's act was void; and *if the defendant was not prejudiced by the court's attempted but void action*, he cannot now complain,— for the words remained. After verdict but before sentence the court deleted the attempted amendment. The presently alleged defect, if any, was formal and amendable. No evidence is required to be produced to the grand jury that the acts charged were "against the peace and dignity of the Commonwealth of Pennsylvania." Cf. *Commonwealth v. Paxton*, 14 Phila. 665; *Commonwealth ex rel. Lieberman v. Smith*, 152 Pa. Superior Ct. 1, 30 A. 2d 625. Whether the words in question were in the indictment or not in the indictment could not possibly have harmed the defendant. The magic words *were*, however, in the indictment returned by the grand jury as a true bill in full compliance with the Constitution.

The judgment and sentence in each appeal is affirmed, and it is ordered that the appellant appear in the court below at such time as he may there be called, and that he be by that court committed until he has complied with his sentences, or any part of them which had not been performed at the time each appeal was made a supersedeas.