Commonwealth *v.* Gallagher, Appellant.

554

Argued October 11, 1949. Before RHODES, P. J., HIRT, DITHRICH, ROSS, ARNOLD and FINE, JJ. (RENO, J., absent).

*James F. Masterson,* with him *G. Fred DiBona,* for appellant.

*George P. Williams, 3rd,* Assistant Deputy Attorney General, with him *John C. Phillips,* Deputy Attorney General, and *T. McKeen Chidsey,* Attorney General, for appellee.

OPINION BY ARNOLD, J., November 15, 1949:

The defendant, George J. Gallagher, was Fire Marshal of the City of Philadelphia, that office having been created by the Act of 1911, P. L. 705, 53 PS §3591 et seq. Under the Act of 1901, P. L. 361, 53 PS §3542, and various ordinances of the City of Philadelphia,[1] permits for the installation of high explosive (here, fuel oil) equip-. ment are granted by the Mayor upon applications which must first be approved by the Fire Marshal's office. No fees of any kind for these approvals are authorized to be taken by the Fire Marshal, a salaried official. The counts of the indictment charged that on twelve different occasions defendant extorted money from applicants in connection with the approval of applications for installation of oil tanks, and in one instance in connection with the approval of an oil burner. The court di-

---

[1] April 2, 1901, page 118; December 30, 1916, page 699; January 4, 1935, page 4.

rected a verdict of not guilty as to the 8th, 9th and 11th counts. The remaining counts went to the jury, verdicts of guilty were returned as to each, and the defendant was sentenced, with a suspension of sentence on count No. 1. Defendant appeals from the several judgments.

The evidence of the Commonwealth, accepted by the jury, showed that the defendant, Fire Marshal of the City of Philadelphia, before approving applications for permits for the installation of fuel oil tanks, took from the applicant a sum of money amounting in most instances to one cent per gallon of the storage capacity of the tank in question. On one occasion he received money to approve a type of oil burner.

Under the statute and ordinance the Fire Marshal was not entitled to any fee for approving applications. Generally the applicant inclosed the money in an envelope handed to him by the defendant. Without going into details,—the evidence established that the defendant made it clear to each applicant that a sum of money must be paid in order to obtain approval of the application. Sometimes a fee was paid to the defendant only, and sometimes an additional fee to one of his inspectors. The defendant, testifying in his own behalf, denied each instance, as did his subordinates involved.

Without question the evidence amply sustains the verdicts, and the defendant-appellant does not otherwise contend. Unless errors were committed by the court below, the convictions must stand. There being no such errors, the judgments will be affirmed.

The counts of the indictment were drawn under The Penal Code of 1939, 18 PS §4318, which reads: "Whoever, being a public officer, wilfully and fraudulently receives or takes any reward or fee to execute and do his duty and office, except such as is or shall be allowed by some act of Assembly, or receives or takes, by color of his office, any fee or reward whatever, not, or more

than is, allowed by law, is guilty of extortion. . . ." The jury believed the Commonwealth's testimony that the defendant did take a reward or fee to execute and do his duty, and did receive, by color of his office, a fee or reward not allowed by law.

I. Defendant contends that he is not "a public officer" within the meaning of the section of The Penal Code in question.

Defendant's office was created by statute, to wit, the Act of 1911, supra, which described the Fire Marshal as holding "an office"; and provided for the appointment of assistant fire marshals and for office assistants. The Fire Marshal was given power to enter into and inspect buildings, and to prohibit combustible material therein; and the Act provided that no gasoline pumps might be erected without a permit issued by him. He is charged with the investigation of fires, authorized to administer oaths, take testimony, and to prosecute for arson. He is given the power to subpœna witnesses, and the refusal to obey such subpœna is made a misdemeanor. He is prohibited from engaging in any other business, and he or his assistants are required to be at the office and ready for duty at all times. He has certain additional duties. The criterion set up by the Supreme Court in *Finley v. McNair et al.*, 317 Pa. 278, 281, 176 A. 10, reads: "Our cases have distinguished such 'officer' from 'subordinate ministerial agents or employees,' such as 'policemen, firemen, watchmen and superintendents of public property under the orders of the municipal department.' . . . In determining whether a position is an office or an employment, it is generally said that the 'question must be determined by a consideration of the nature of the service to be performed by the incumbent, and of the duties imposed upon him, and whenever it appears that those duties are of a grave and important character, involving in the proper performance of them some of the functions of government,

the officer charged with them is clearly to be regarded as a public one' [Richie v. Phila., 225 Pa. 511, 74 A. 430]. . . ." Certainly the duties of the Fire Marshal of the City of Philadelphia are of a grave and important character. They do involve the proper performance of some of the functions of government. We think it self-evident that the Fire Marshal of the City of Philadelphia is a "public officer." Cf. *Arthur v. Philadelphia et al.*, 273 Pa. 419, 117 A. 269; *Commonwealth v. Hubbs (No. 2)*, 137 Pa. Superior Ct. 244, 8 A. 2d 618; *Evans v. Luzerne County*, 54 Pa. Superior Ct. 44; *Brower v. Kantner*, 190 Pa. 182, 43 A. 7; *Foyle et al. v. Commonwealth et al.*, 101 Pa. Superior Ct. 412; *Commonwealth ex rel. Lowell v. Hoyt*, 254 Pa. 45, 98 A. 782; *Saar v. Hanlon et al.*, 163 Pa. Superior Ct. 143, 60 A. 2d 432. We point out that The Penal Code of 1939, in contradistinction to the Criminal Code of 1860, does not require the defendant to be an officer "of the Commonwealth."

II. Appellant complains that the court's charge failed to define "wilfully and fraudulently" as used in §318 of The Penal Code, which reads: "Whoever, being a public officer, wilfully and fraudulently receives, etc." Presumably the words "wilfully and fraudulently" were inserted in §318 of The Penal Code of 1939 to relieve from criminality one who *mistakenly* believes that he is entitled to a fee, for in many jurisdictions where the money is taken under a bona fide belief that he is entitled to it, he is still guilty of extortion. The common meaning of the word "wilful" is "intentional." The common meaning of the word "fraudulent" is "dishonest." In the absence of request there was no need for the court to define these terms, which actually speak for themselves. Cf. *Commonwealth v. Sarricks*, 161 Pa. Superior Ct. 577, 581, 56 A. 2d 323. No definition would have aided the jury, for the defendant had no authority to accept any money for the performance of his official duties, and he did not claim that he took the money under any

mistaken belief that he was entitled to it. Had counsel wished a specific charge upon these words he should so have requested, or at least called to the attention of the court what he now claims was an omission. The defendant in no way intimated that the crime had not been satisfactorily described to the jury, and under such circumstances a new trial should be refused: *Commonwealth v. Buoy*, 128 Pa. Superior Ct. 264, 268, 269, 193 A. 144. "If the trial judge fails to elaborate on questions of law upon which he has charged, it is not reversible error when no points are submitted or requests made asking for more definite instructions": *Commonwealth v. Buoy*, supra. See also *Commonwealth v. Pacito*, 229 Pa. 328, 78 A. 828; *Commonwealth v. Bruno*, 316 Pa. 394, 402, 175 A. 518, 521; *Commonwealth v. Newson*, 277 Pa. 48, 53, 120 A. 707, 708. A failure to reiterate relevant legal principles in the absence of a request to charge more fully on any such omission or inadequacy does not constitute reversible error: *Commonwealth v. Campbell*, 116 Pa. Superior Ct. 180, 176 A. 246. The court thoroughly explained the nature and character of the offense of extortion by a public officer, and indeed the defendant does not complain thereof. Under the evidence defendant took the money intentionally and therefore wilfully. Such a taking under color of office was fraudulent, he being entitled to no fees at all, and being simply engaged in what is commonly called "graft."

III. Appellant contends that each of the persons from whom the money was extorted was an accomplice to his crime of extortion, and that therefore he was entitled to a charge on the quality of accomplice testimony. This contention is answered adversely to the defendant in *Commonwealth v. Hopkins*, 165 Pa. Superior Ct. 561, 69 A. 2d 428.

IV. On cross-examination of one of the witnesses for the Commonwealth, and to affect credibility, defendant's counsel asked: "Q. Have you ever been convicted

of delivering coal without weighing—?" The court sustained the Commonwealth's objection. There was no offer to prove a conviction of any offense involving intent. Appellant's brief states that the witness in question "had been convicted on several occasions in *summary proceedings*" (one of which was sustained on appeal to the Quarter Sessions), under the Act of Assembly, the penalty for which is provided in §14 of the Act of 1921, P. L. 389, 76 PS §114. The offenses thus penalized were malum prohibitum only. The record of a summary conviction of a malum prohibitum offense, no intent being involved, does not establish an infraction of the law which is crimen falsi, or involves moral turpitude.

V. During the course of the trial the Commonwealth, to indicate that the crime charged was statutory and not at common law, moved to amend the indictments by deletion of the words, "against the peace and dignity of the Commonwealth of Pennsylvania," leaving in the indictment the words, "contrary to the form of the Act of Assembly in such case made and provided." The court granted leave to amend. After verdict, but before sentence, the court revoked the leave previously granted. It is now contended that the indictments were fatally defective because Article V, §23 of our Constitution "makes mandatory" that the indictment conclude with the words, "against the peace and dignity of the same [the Commonwealth of Pennsylvania]." We doubt that the words are mandatory, but if they are, the court below was without power to delete them from the indictment, and the attempt to take them out was a nullity; and *if, as here, the defendant was not harmed* by the attempted deletion, there was no prejudicial error, for the reasons: (a) that in contemplation of law the words were not removed from the indictment because the court lacked the power to delete them; (b) the court's order of deletion was revoked before sentence. See *Common-*

*wealth v. Hopkins,* 165 Pa. Superior Ct. 561, 69 A. 2d 428.

The judgment and sentence in each appeal is affirmed, and it is ordered that the appellant appear in the court below at such time as he may there be called, and that he be by that court committed until he has complied with his sentences, or any part of them which had not been performed at the time each appeal was made a supersedeas.