## Commonwealth v. Gober

*Paris J. DeSantis,* Assistant District Attorney and *Harry W. Lightstone,* District Attorney, for Commonwealth.

*Joseph A. Zane,* for defendant.

STAUDENMEIER, J., December 14, 1964.—This matter is before us on defendant's petition and rule to quash the information which sets forth: "That within the said county on the Mts. of Feb., March, April day of ———A. D. 1964, a certain Robert P. Gober of 203. Schuylkill Ave., Shenandoah Hghts., Shenandoah, Penna. Did during the past and above Mentioned months, enter the home of Mrs. Alberta M. Gober of 10 N. Lehigh Ave., Shenandoah, Pa., did illegaly enter my home, and remove and put to use, for his own personal good, and use and convert to his own use the various goods he stole from my house, such as Radios, Hi. Fi. Set Bedding also a bed, Electric Sweeper, and also an itemized list of Personal Belongings. Amounting to over $1000.00 Dollars I am hereby charging him with Larceny of Personal Property. This is a Felony. Page 256, Sec; 807. Penna. Criminal Law and Criminal Procedure."

The district attorney filed an answer to the petition.

The case appeared on the October 1964 argument list and was submitted on briefs to the court sitting en banc.

Defendant's first contention is that the information should be quashed for the reason that under the law of the Commonwealth of Pennsylvania, a wife cannot arrest her husband for larceny.

It is true that under the common law rule there could be no theft by a husband of his wife's property. There were two reasons for this common law rule, first at common law there was no separate right of property in a married woman, and second, "the merger of their beings in the unity of marriage."

Since the passage of the Married Women's Property Acts, a wife has full property rights independent of her husband. A husband and wife have ceased to be one person in the contemplation of our statutory law: In re:Estate of Mary Vandergrift, 105 Pa. Superior Ct. 293, 297, 161 Atl. 898.

The Act of June 8, 1893, P. L. 344, sec. 3 declared, inter alia, that a married woman may sue and be sued civilly with the same effect and results and consequences, as an unmarried person; she may sue her husband in a proceeding to protect and recover her separate property. The act accords the husband the same right: 48 PS §111.

One of the necessary elements of the crime of larceny is the felonious and fraudulent taking and carrying away of the personal property of *another*. Clearly since the passage of the Married Women's Acts, the fiction of unity has been destroyed and the wife became "another."

Hence we come to the question: Did the passage of the Married Women's Property Acts, which give married women the right to own property and to sue and be sued with respect thereto, abrogate, without any corresponding change in the larceny law, the settled common law rule that there could be no theft by a husband of his wife's property, since she could have, at common law, no separate property?

We have been unable to find any Pennsylvania decision in point.

After extensive research we conclude that a husband may be convicted of the crime of larceny, for appropriating the separate property of his wife. This was the conclusion reached by the New York Court of Appeals in People v. Morton, 308 N. Y. 96, 123 N. E. 2d 790, 791 (1954), wherein the court said:

"The larceny statutes, old and new, penalize, in varying verbiage, the wrongful taking of the property

of another. Before the Married Women's Acts, the existing larceny laws were inapplicable to a husband's taking of his wife's chattels, but only because such chattels did not belong to 'another' but, under the old fictions, belonged to the husband himself. So, when the wife became 'another', the larceny statutes without necessity of amendment covered her losses as well as those of any other lawful owner of property. We cannot, at this late date, discover the actual legislative intent, if any, nor can we refuse to apply an old plain statute to a new plain fact within the statute's coverage."

Defendant in his brief after pointing out that no Pennsylvania cases have been found suggesting that the foregoing common law rule has been abrogated, cites an early Pennsylvania case, Walker v. Reamy, 36 Pa. 410, (1860), wherein the court by way of dictum has suggested that the Act of April 11, 1848, should not be interpreted as modifying the common law rule. The Act of April 11, 1848, P. L. 536, declares that a single woman's property shall continue hers "as fully after marriage as before," and that property acquired by a married woman "shall be owned, used and enjoyed by her as her own separate property;" and in neither case shall it be subject to levy and execution for the debts of her husband, or to being transferred or encumbered by him without her consent.

It will be immediately noted that the Act of 1848 is not nearly as broad in its scope and far-reaching as the Act of June 8, 1893, P. L. 344, supra.

The Supreme Court in discussing the 1848 Act stated at page 414:

"A little reflection will make it quite obvious that the terms here used will not bear to be taken in their largest signification. They are, in fact, limited in the law itself in several important particulars, one of which is, that her husband, on her death, shall have his courtesy,

whether she will or not. And as the only object of the act was to afford a protection to the estates of married women, we may assume that it was not intended that she should so 'fully' own her 'separate property' as to impair the intimacy and unity of the marriage relation. It was not intended to declare that her property should be so separate that her husband could be guilty of larceny of it, or liable in trespass or trover for breaking a dish or a chair, or using it without her consent. It was not intended, by allowing her to own her property 'as fully after marriage as before,' that he should not sit at her table, or use her furniture or house, without her consent specially given, or that she might have an action of assumpsit against him for use and occupation of her house, or for the use of her carriage, or for boarding at her expense, or that she may obtain a divorce, a mensa et thoro, by an action of ejectment. It was not intended that her property should be so separately hers that she might invest her funds in cattle, or ships, or notions, or menageries, or wagons, without his consent, and turn drover, or shipmaster, or common carrier, or travelling showman, or pedlar. The unity of the marriage relation forbids this, and our common sense saves us from such an interpretation of the law."

Counsel for defendant further points out that a wife may not testify against her husband in a criminal proceeding and consequently her testimony before the justice of the peace was a nullity and the return of the information should not have been made.

The information merely discloses that the wife appeared as the prosecutrix: nothing appears on same to indicate that she was a witness. Moreover, there is a marked distinction between competency as a prosecutor and competency as a witness on the trial of the cause in court: Commonwealth v. Geary, 9 Pa. C. C. 60; Commonwealth v. Vance, 29 Pa. C. C. 257; Commonwealth v. Barr, 25 Pa. Superior Ct. 609.

Counsel further contends that inasmuch as the wife has a perfectly legitimate civil remedy which she can pursue, there was no necessity for this criminal action.

The mere fact that the statutory law now gives the wife the right to institute a civil action should not preclude her from instituting a criminal prosecution.

There is no merit to the first contention.

Defendant's second contention is that the information is vague and not specific as to a date when the alleged offense occurred.

There is no merit to this contention. The information sets forth the months of February, March, April, day of ........ A. D. 1964.

The information is sufficiently specific as to time and place.

The third contention is that the information is vague and not specific as to a description of the items alleged to have been taken.

There is no merit to this contention.

The information was sworn to on May 21, 1964, there is attached to same, an itemized list of articles, the paper is dated May 21, 1964 and is headed: "This is a Continuation list of Further missing Personal belongings of Mrs. Albert M. Gober, 10 N. Lehigh Street, Shenandoah, Schuylkill Co. Penna."

After enumerating 13 personal articles, the following appears: "This is only a Part of what I have found Missing and I have not as yet made a complete survey of everything else that was in the house.

and Further Said Not

Signed—Alberta M. Gober."

The body of the information, it will be noted states "and also an itemized list of personal belongings."

The fourth contention is that the information is faulty and does not allege a crime under the laws of the Commonwealth.

In support of this contention, defendant states there is no allegation of a taking that was felonious. An examination of the information readily discloses that there is no merit to this reason. The information uses the word "stole," also "I am hereby charging him with Larceny of Personal Property."

It has been repeatedly held that the technical accuracy necessary to an indictment is not required or essential in an information; an information is sufficient if it puts the accused on notice of the crime for which he is being held. See opinion of this court, Commonwealth v. Docherty, 54 Schuyl. 47, 49; 18 P. L. Encyc. 199, 200; Commonwealth v. Miller and Burke, 77 Pa. Superior Ct. 469.

In Commonwealth v. Robertson, 47 Pa. Superior Ct. 472, 475, the court held: "If the essential elements of the offense be set forth in the terms of common parlance the information will be held to be sufficient."

Committing magistrates are not usually learned in the law, and all that should be required of them, is a plain statement of the charge laid. The putting of it in legal phraseology thereafter becomes the duty of the district attorney.

Defendant advances the further reason that the information is fatally defective since it does not conclude with the phrase "against the peace and dignity of the Commonwealth" as required by article 5, sec. 23, of the Pennsylvania Constitution.

We have made an extensive search as to whether the aforesaid conclusion applies to informations and fail to find any adjudicated cases holding that this conclusion is required in an information. In several cases the sufficiency of indictments was considered where they did not contain the constitutional conclusion: Commonwealth ex rel Lieberman v. Smith, 152 Pa. Superior Ct. 1, 30 A. 2d 625 (1943); Commonwealth v. Gallagher, 165 Pa. Superior Ct. 553, 69 A. 2d 432 (1949); Com-

monwealth v. Hopkins, 165 Pa. Superior Ct. 561, 69 A. 2d 428, (1949). In the Hopkins case, Judge Arnold in considering this conclusion in indictments observed, at page 568: ". . . It may well be doubted that this is a mandatory requirement of the Constitution,—rather one would think that it is directory."

In Commonwealth v. Gallagher, supra, the lower court after verdict but before sentence revoked the leave to amend the indictment by deletion of the words, "against the peace and dignity of the Commonwealth of Pennsylvania"; which leave was granted on motion during the course of the trial.

The action of the court was a holding in effect that the indictment could be amended by a restoration of the words deleted.

In the Gallagher case, Judge Arnold again stated, at page 560, that he doubted that the words are mandatory.

In Commonwealth v. Hessman, 8 D. & C. 2d 625, defendant was charged with a summary offense, speeding. The information did not contain the concluding words under consideration. The court held that the inclusion of this constitutional language in the information charging a summary offense is not mandatory.

We are of the opinion that the information in the instant case would be amendable to include the constitutional language.

Defendant's final contention is that the information should be quashed for the reason that the transcript of the information lodged before the justice of the peace does not contain the names of witnesses.

There is no merit to this contention, if for no other reason that the transcript of the information discloses that on May 21, 1964, defendant was given a hearing and hence had an opportunity to observe and hear the witnesses.

We are aware that this opinion is somewhat lengthy; however, defendant's counsel raised questions which rendered necessary considerable research.

We have carefully examined the information and the law applicable to the contentions advanced by the defendant and must conclude that there is no merit to same.

And now, December 14, 1964, the motion to quash the information is denied, and the rule to show cause is discharged.

And now, December 14, 1964, upon motion of counsel for defendant, an exception is noted.