# Commonwealth *v.* Shaffer, Appellant.

*Criminal law—Malicious mischief—Malice—Tearing down fences—Destroying windows and doors—Railroad—Condemnation of land—Acts of March 31, 1860, sec. 148, P. L. 382, and March 23, 1865, sec. 1, P. L. 42.*

In a prosecution for malicious mischief, malicious intent towards the owner, real or constructive, of the property injured, must always be proven.

A person cannot be successfully charged with the commission of malicious mischief where he shows that the title to the property injured was in himself, or shows a belief, although mistaken, that the property was his own.

Where a railroad company has regularly begun and completed condemnation proceedings by filing its bond according to law, and has procured the approval of the same by the court, employees of the company cannot be convicted of malicious mischief under the Acts of March 31, 1860, sec. 148, P. L. 382, and March 23, 1865, sec. 1, P. L. 42, because they went upon the premises under the instructions of the company, and tore down fences, and windows and doors, to clear away obstructions so as to prepare the property for use for railroad purposes, the evidence showing that the entry was after reasonable notice and was not accompanied with any acts of wantonness or malice. In such a case the title to the property vested in the railroad company as soon as the bond was filed, and the former owner had no right to continue to occupy it, and no standing to prosecute the employees for their acts in removing the obstructions.

*Criminal law—Forcible entry—Railroads—Condemnation proceedings.*

Where a railroad company has condemned land and has perfected its title thereto by filing its bond and securing the confirmation of the bond by the court, its employees may enter upon the premises, and remove the permanent buildings thereon without liability to prosecution for forcible entry, provided they do not abuse their power.

If the former owner's refusal to surrender possession, renders an entry by force necessary to oust him, such entry is not the act of an individual to enforce a private right, but the act of the public to enforce a public right.

Argued Oct. 2, 1906. Appeals, Nos. 30, 31, 32, 33 and 34, April T., 1907, by defendants, from judgment of Q. S. Cambria Co., Sept. T., 1905, Nos. 47, 48, 49, 50 and 51, Sept. T., 1905, on verdict of guilty in case of Commonwealth v. E. P.

Shaffer et al.    Before Rice, P. J., Porter, Henderson Morrison, Orlady, Head and Beaver, JJ.    Reversed.

Indictments for malicious mischief and forcible entry.    Before O'Connor, J.

From the record it appeared that the Pennsylvania Railroad Company condemned a property in the city of Johnstown belonging to one John Schonhart, and duly filed their bond which was confirmed by the court.    Schonhart refused to surrender possession, and the defendants, who were employees of the railroad company under instructions from the company, went upon the premises and proceeded to remove the fences and permanent buildings in order to clear the way for railroad construction.    There was testimony that a large number of persons were gathered together, and that the defendants were armed with crowbars and picks.    There was also testimony that in removing the windows, doors and partitions, carpets were injured.

The court charged in part as follows :

Now, does the testimony satisfy you, beyond a reasonable doubt, that the conduct of the defendants on this occasion evidenced violence and a strong hand ?    Some of the witnesses testified that the defendants were armed with crowbars and picks.    The prosecutor testified that he had a stick, but it was not strong enough, and he got or asked for a baseball bat.    We are only recalling this so as to direct your attention to the material part of the testimony in the case, for upon it depends your verdict.    You have a right to consider this testimony ; you have a right to consider the testimony to the effect that there was a large number of people assembled there ; you have a right to consider all the testimony in the case as bearing upon the question whether or not there were violence and a strong hand shown there and whether or not the peace of the neighborhood was disturbed.    It is not necessary that a blow be struck.    If the neighborhood is disturbed—if the peace and quiet of the neighborhood are disturbed—by some show of violence or some loud and unseemly conduct, that would be sufficient to make out a breach of the peace.

You take the case and determine carefully what the facts

are.    If the evidence brings your minds to the firm, unwavering conclusion, beyond a reasonable doubt, that there was such a strong show of force as to frighten the members of the Schonhart family and to disturb the neighborhood, and that the defendants, in that manner, took possession of the property, you convict them of forcible entry.    If you are not so satisfied from the evidence in the case, then it would be your duty to acquit them; in other words, if the evidence does not satisfy you of the guilt of the defendants beyond a reasonable doubt the defendants are entitled to the benefit of the doubt and you would acquit them.

The other three bills of indictment relate to malicious mischief.    Mr. Robinson is charged with malicious mischief committed upon June 7, and in the other bills the other defendants are charged with having committed the offense in the morning of the same day, about 11 o'clock, and also in the afternoon.    Did these defendants, or any of them, at any time, act with such total disregard for the property rights of the prosecutor in the case as satisfies you, beyond a reasonable doubt, that they at least had what is known as legal malice? It is not necessary, in order to make out a case of this character, that the defendants acted with special malice; that is, with spite or ill will; this of itself constitutes legal malice, and legal malice is an element which must appear before there could be a conviction of malicious mischief.

In this connection we call your attention to the fact that the owner of the property was the Pennsylvania Railroad Company; that is, they were entitled to the possession of the property, and if the injury committed were only to their own property, then it would not be malicious mischief, because they would have the right to use their own property as they pleased.    But if in the destruction of their own property— that is, the property of the Pennsylvania Railroad Company— they injured the property rights of the prosecutor through a plain disregard of his rights (you have heard, for instance, about the tearing down of the plastering, the throwing of this stuff upon the carpets, etc.), and you find, under our instructions, that there was such a disregard for the property rights of the prosecutor as amounts to legal malice, then the defendants could be convicted of malicious mischief.    If there was

not, or if you have a reasonable doubt upon that point, then you would render a verdict of not guilty in either or all of such indictments as you find the facts to thus exist.

Verdict of guilty.    The court refused to arrest the judgment and sentence was duly passed.

*Error assigned* among others was in refusing to arrest the judgment.

*H. W. Storey,* for appellants.—No malice was shown: Com. v. Drass, 146 Pa. 55; Williams v. People, 24 How. Prac. 350; Schuler v. R. R. Co., 3 Wharton, 555.

It seems the authority given to the Pennsylvania Railroad Company to enter upon, take, use and appropriate any land which may be necessary for the public benefit was ample, as much so as an eviction by a sheriff or a constable; either of them would be with the authority of the law.

The authorities seem to hold that the action of forcible entry and detainer does not apply in any case where the right of eminent domain exists: Gibbs v. Drew, 16 Fla. 147; Rees v. Lawless, 12 Am. Dec. 295; Mitchell v. R. R. & Coal Co., 68 Ill. 286; McMasters v. Com., 3 Watts, 292; People v. City of New York, 32 Barb. 102.

*M. B. Stephens,* with him *J. W. Leech,* district attorney, and *John H. Stephens,* for appellee.—In a prosecution for forcible entry and detainer the question of title is not at issue, and evidence relating thereto may be properly rejected: Quinn v. Commonwealth, 20 W. N. C. 293.

Malice may be inferred from the wantonness or cruelty of the act or from the willful disregard of the rights of others: Com. v. Strode, 27 W. N. C. 437.

Malicious mischief has been held in Pennsylvania to apply to animate, as well as inanimate, objects, and the courts have gone further than in England or any other state in holding malicious mischief to be an indictable offense: Davis v. Commonwealth, 30 Pa. 421; Commonwealth v. Cunningham, 1 Pa. Dist. Rep. 573; Commonwealth v. Nusky, 1 Pa. Dist. Rep. 561.

OPINION BY HEAD, J., February 25, 1907:

By section 148 of the Act of March 31, 1860, P. L. 382, it

is provided that if any person shall willfully and maliciously break, injure or destroy any window or door belonging to any dwelling house or outhouse parcel thereof, such person shall be guilty of a misdemeanor, etc.

By section 1 of the Act of March 23, 1865, P. L. 42, it is provided that if any person shall maliciously or wantonly break and throw down any post and rail fence erected for the inclosure of land, or shall carry away, break or destroy any post, rail or other material of which such fence was built, such person shall be guilty of a misdemeanor.

Three of the five indictments under which the appellants were tried in the court below charged them with having committed malicious mischief in violation of the provisions above cited. The property mentioned in each bill is precisely the same, to wit: a certain fence inclosing a lot of ground in the city of Johnstown, formerly the property of one John Schonhart, and the doors and windows which were part of the dwelling house erected on said property. All of the defendants named in these three bills of indictment, as well as those named in two other bills to be hereafter mentioned, were tried together before the same jury, and on every bill there was rendered a verdict of guilty with a recommendation to the mercy of the court. At the conclusion of the trial the learned trial court was asked to direct a verdict in favor of the defendants, and his refusal to so instruct the jury constitutes one of the assignments of error.

The offenses described and prohibited by the statutes quoted are species of an offense long known as malicious mischief. This offense, whilst varying somewhat in its minor details owing to the different statutory enactments in different jurisdictions, has from the remotest times been individuated by certain peculiar attributes which must be shown to exist in every case in order to support a conviction. The definitions of it adopted by standard text-writers, and indeed its name itself, clearly indicate that malicious intent towards the owner real or constructive of the property injured must always be proven. Without such intent this particular offense does not and cannot exist. Hence it has ever been held that where the injurious act is done or committed in the exercise or enforcement of what the defendant honestly believes to be his legal right, even

though such belief should be a mistaken one, there can be no conviction: Whart. Cr. Law, secs. 1065 and 1067; Bishop's Cr. Law, secs. 298, 570 and 998; Com. v. Drass, 146 Pa. 55. This is but another application of the controlling principle so often announced in cases of larceny, namely, that the intent to steal is the very essence of the offense. If, therefore, one charged with the commission of malicious mischief may successfully defend by showing that the acts complained of, although they may have injured or destroyed the property of another, were done in the mistaken belief that the property was his own, a fortiori it must follow that his defense is complete if he actually shows by the undisputed testimony that his title to the property injured was unquestioned.

It is conceded in the present case that the defendants whose acts are complained of were the servants and employees of the Pennsylvania Railroad Company, acting under its authority. It is also agreed that long before the commission of these acts that company had regularly begun and completed condemnation proceedings to appropriate and take for public use the ground formerly belonging to the prosecutor, John Schonhart, upon which the fence and the building, of which the doors and windows mentioned in the indictment were parts, stood. The bond of the company, conditioned according to law, had been filed in the court of common pleas of Cambria county and approved without objection on December 28, 1904. Notwithstanding this fact the prosecutor had refused to surrender the possession of the property and continued to occupy it, in spite of a formal notice to vacate, until June 7, 1905, when the defendants, acting under the instructions of the company, went upon the property to clear away the obstructions so as to prepare it for use for railroad purposes.

We think there can be no doubt that, under our constitution and laws as frequently construed by our Supreme Court, the title of the former owner to the property, including the buildings and fence, was divested as soon as the bond was approved, and the right of the railroad company, in this respect exercising the powers of the state, to enter upon the property and prepare it for, and subject it to, the public use for which it had been condemned, was complete: Hoffman's Appeal, 118 Pa. 512; Fries v. Southern Pennsylvania Railroad & Mining Co., 85 Pa.

73 ; Fischer v. Catawissa Railroad Co., 175 Pa. 554. It seems clear to us, therefore, that the commonwealth entirely failed to establish the all-important averment in the bills, to wit : that the property alleged to have been injured " was then and there the property of John Schonhart," and that failure ought to have resulted in the acquittal and discharge of the defendants charged with malicious mischief. We do not understand the court below to have in any way denied the principle that the title to this property for railroad purposes vested in the railroad company upon the approval of the bond, and, as a necessary consequence, the servants and employees of that company could not be convicted of malicious mischief by following its directions in removing or destroying it. But the court, through some inadvertence, went outside of the averments in the indictment and permitted the jury to consider the injury to carpets, etc., by the tearing down of plastered partitions and otherwise. Inasmuch as the bills of indictment were evidently drawn with care to meet the requirements of the statutes above quoted, we are satisfied that the offense of malicious mischief as charged in the bills of indictment was not made out against the defendants, and their request for binding instructions should have been granted.

The conviction of the remaining defendants in the two bills charging the offense of forcible entry on the same premises and under the same circumstances already adverted to, invites the consideration of a broad question that, so far as we can discover, has not heretofore been presented to the appellate courts of this state. The law defining and punishing this offense was not designed primarily to protect an individual in the enjoyment of property in his possession, but rather to secure to the people generally the public peace and repose without which a civilized community cannot accomplish the ends for which government is instituted.

The enforcement of those laws which secure to all the people the rights necessary for their common well-being, which advance the public good, is therefore the paramount duty of a state ; whilst the right of an individual to possess and enjoy even the property that is demonstrably his, must be secured and exercised in subordination to the higher public right, and only through those channels which the state provides. Hence a man

may be properly convicted of the offense of forcible entry who violently and forcibly enters on property, indisputably his, to dispossess another who is in actual and quiet possession at the time, because he breaks or threatens a breach of the public peace; because he sets the private above the public right and inverts the order in which the law of the land has declared these rights must be regarded and enforced. But a sheriff, armed with a writ requiring him to dispossess one in the occupancy of lands or houses and put another in his stead, may summon to his aid, and actually use, as much force as is necessary to enable him to obey the mandate of his writ. When a municipality has lawfully ordained a new public street it becomes the duty of the proper executive officer to open that street by removing, from within its lines, everything that would embarrass or obstruct the enjoyment, by the public, of the new use to which the land has been subjected. In thus enforcing, not a private but the public right, he may lawfully use as much force as is necessary. The responsibility for the use of force in such cases is not upon the instrumentality thus executing the public law but upon him who defiantly and without right resists it.

When a public, or quasi public, corporation, to which the state has delegated its high prerogative of taking private property for public use, undertakes to exercise that right in the manner provided by our constitution and laws—and here we speak only of cases wherein the regularity and legality of the condemnation are unquestioned—the appropriation proceeding, strictly speaking, is at an end when its bond has been filed and approved. The act of approval is the final step of the proceeding by which the title of the former owner has been divested and the right of the public to the use and enjoyment of the property condemned has become complete. " The security being given in due course of law the grasp of the owner upon his property is loosened by the constitution itself: " Fries v. Railroad & Mining Company, 85 Pa. 73. The title of the former owner has therefore passed over, through a channel created by the constitution and laws, to the public. It is undoubtedly the duty of the former owner, as soon as his title has thus passed, that is to say as soon as his purchase money has been paid or lawfully secured by the filing and approval of a bond, to surrender the possession to the public or its duly constituted

agent.   If his willful refusal to discharge his duty in this respect renders an entry by force necessary to oust him, such entry is not the act of an individual to enforce a private right, but the act of the public to enforce a public right.   In essence and substance such an entry is akin to those, already mentioned, made in execution of the judgment of a court or the enactment of a municipal legislature.

It follows, then, that they, who in contemplation of law are the proper persons to make such an entry, may lawfully use as much force as is necessary to accomplish the object of the law, which is, to prepare the property for the new public use to which it has been legally dedicated.

Whilst it is true that neither the constitution nor any statute has formally designated any agent to exercise such right of entry it must have been contemplated that it could and would be exercised by some agency when the necessity for it should arise.   Otherwise the entire scheme, so carefully provided even in our fundamental law, for the summary taking of private property and subjecting it to public use as the public necessity or convenience may require, could be rendered wholly useless and ineffective by the obstinacy or viciousness of a single individual.

We regard the reasoning here adopted and the conclusion to which it leads as nothing more than the logical development and application to the circumstances now before us, of the principle laid down by the Supreme Court in the case of Schuler v. Northern Liberties, etc., Railroad Company, 3 Whart. 555. The action there, it is true, was trespass.   The railroad company was authorized by its charter to take private land for public use upon paying for the same, or in case of failure to agree with the owner, by paying into court the amount that would be properly assessed as damages.   Having failed in that case to agree with the owner, the company paid the damages into court.   The owner then took a writ of certiorari and the company having entered upon his property he brought an action of trespass.

Mr. Justice ROGERS, in the course of the opinion in that case, uses the following language: "Where the directions of the act are pursued, the company is acquitted from all responsibility for any injury which may be done.   The legislature, while they guard the rights of the owner of the land through which the

road passes, have thought proper to avoid, as far as practicable, any vexatious or unnecessary delay—a consideration of great importance in a work of this description, and which they would seem to have had specially in view in the charter granted to the company; and this, if not conceded, has been but faintly denied."

The power to take possession of property which has been condemned for public use, is therefore an incident of the power to condemn, and as the law has not formally designated the agency through which it is to be exercised, every rational principle of construction impels us to conclude that it should be exercised by the corporation to which is given the expressly delegated power of condemnation. It is true such power may be abused; but so may that committed to a sheriff, burgess or other human agency. But with the abuse of power comes liability, civil or criminal, or both. With this, however, we are not called upon to deal in the cases now before us, because the indictments do not aver nor does the evidence disclose any willful or wanton abuse of power. No actual violence was done or threatened to anyone. The force gathered, if collected to enforce a private right of entry, would have been a menace to the public peace and might have warranted the conviction of the defendants. But assembled, as it was, to clear the property of permanent buildings that obstructed and prevented its public use, it was stripped of its otherwise dangerous feature. Indeed, we cannot understand the verdicts rendered otherwise than as findings that the defendants, although technically guilty of the offenses as defined by the learned trial court, had abstained from all acts indicating a willful or wanton disregard of the rights of the general public or the prosecutor. Upon a general review of the entire evidence and the principles of law applicable thereto, as we have endeavored to define them, we are of the opinion that the commonwealth failed, in all the cases, to make out the offenses charged in the several indictments and the points craving binding instructions in favor of the defendants should have been affirmed.

Judgment reversed and the defendants are now discharged without day. The costs of this appeal to be paid by the appellee.