# Crider *v.* Pittsburg, Harmony, Butler & New Castle Railway Company, Appellant.

*Street railways—Eminent domain—Death of owner—Right to damages —Bond—Ascertainment of damages.*

1. Where an owner of land grants to a street railway company a right of way defined and located in the deed, and thereafter the railway company without the knowledge or consent of the owner who did not live on the land, relocates a larger part of its line, and subsequently the owner dies, the right to damages as to the part relocated passes with the title to the heirs at law of the owner; and if the railway company tenders a bond to the heirs which they accept, the company in an action on the bond cannot allege that the heirs were not the proper parties to recover the damages.

2. In such a case the damages are to be ascertained as of the date of the giving of the bond and not as of the date of the original entry upon the land.

Argued April 22, 1913.   Appeal, No. 95, April T., 1913, by plaintiffs, from judgment of C. P. No. 2, Allegheny Co., Jan. T., 1910, No. 750, on verdict for plaintiff in case of J. L. Crider and Clara B. Miller v. Pittsburg, Harmony, Butler and New Castle Railway Company. Before Rice, P. J., Henderson, Morrison, Orlady, Head and Porter, JJ.   Affirmed.

Issue to determine damages resulting from the taking of land.   Before Evans, J.

From the record it appeared that in April, 1905, Joseph Crider conveyed to the defendant company by deed a right of way through his land. The location of the right of way was defined in the deed. Subsequently without the knowledge or consent of Crider who did not live upon the land the company relocated a larger part of its right of way on the Crider land. Crider died on October 30, 1908. By this time the company had practically completed the construction of its line. On December 31, 1908, the defendant executed and tendered to the plaintiffs who were Crider's heirs at law, a bond to secure the damages for the taking of the land. On November 22, 1909, the company petitioned for the appointment of viewers. The parties thereafter agreed that the case should be tried in court without any preliminary proceeding before viewers.

At the trial plaintiffs made the following offer:

Mr. Cecil: For the purpose of fixing the time of the appropriation, we offer in evidence bond of the defendant company, dated December 31, 1908, which it has been admitted by counsel for defendant was tendered and accepted by the plaintiffs in this case as security for the damages by reason of the appropriation of any land.

Mr. Lyon: It is objected to, if the court please, as not

being the proper method of fixing the time of the appropriation.

Objection overruled. [7]

Defendant presented the following points:

1. If the railway company, having the right of eminent domain, entered and constructed its railway during the life of the plaintiffs' father, the then owner of the land, without tendering or filing a bond, but without objection from him, no trespass was committed by it.

The undisputed evidence is that the entry and construction were during said father's lifetime; and there is no evidence of any objection thereto on his part. *Answer:* Refused. [1]

2. The railway company, having the right of eminent domain and being in possession and operation of its railway, is presumed to be lawfully in such possession; and the burden of proving the unlawful possession is upon the plaintiffs.

There is no proof in the case of such unlawful possession. *Answer:* Refused. [2]

3. The tender of the bond by the railway company, and acceptance by the plaintiffs, was for such damages as they might be entitled to, and is not to be considered as evidence of their right to recover. *Answer:* Refused. [3]

4. The damages resulting by reason of the construction of the railway were personal to the then owner of the land, the plaintiffs' deceased father, and did not pass to the plaintiffs as his heirs at law. *Answer:* Refused. [4]

5. The plaintiffs, having inherited the land from their deceased father, with the railway already constructed upon it, cannot recover for the damages caused thereby. *Answer:* Refused. [5]

6. The entry and construction of the railway occurring in the lifetime of Joseph Crider the right to recover for the ground occupied by the construction of the railway belongs to the owner at the time of such entry,

appropriation and construction, regardless of the fact that no bond was given him during his lifetime but was subsequently given to his heirs. *Answer:* Refused. [6]

Verdict and judgment for plaintiffs for $1,475. Defendant appealed.

*Errors assigned* were (1–6) above instructions, quoting them.

*Walter Lyon,* of *Lyon & Hunter,* for appellant.—Any damages accruing while in the possession of the predecessor in title are personal to him: Hay's Est., 29 Pitts. Leg. J. 311; Sloan v. Hoyt, 40 Pa. Superior Ct. 181; Mountz v. R. R. Co., 203 Pa. 128.

The title to the right of way vested not through the proceeding initiated by the bond, but by the original occupation of the land: Davis v. Ry. Co., 114 Pa. 308; Johnston v. Callery, 173 Pa. 129.

*Owen S. Cecil,* for appellees, cited: Shevalier v. Postal Tel. Co., 22 Pa. Superior Ct. 506; Graham v. Pittsburg, etc., R. R. Co., 145 Pa. 504; Oliver v. Ry. Co., 131 Pa. 408; Fischer v. R. R. Co., 175 Pa. 554.

OPINION BY HEAD, J., October 13, 1913:

It is conceded that at the time of his death, October 30, 1908, Joseph Crider was the owner in fee of a tract of land across which the defendant company had just constructed its line of railway. He did not reside on the land. Upon his death the title to the land vested in the two plaintiffs, his children and heirs at law. On or about December 31, 1908, the defendant executed and tendered to the plaintiffs a bond which was accepted by the latter. It recited that defendant had "located its tracks and line of railway over and through that piece of land owned or claimed and now in possession of" the plaintiffs. It secured to them the payment of "such amount of damages as they shall be entitled to receive after the same shall have been agreed

on by the parties or assessed in the manner provided by law." On November 22, 1909, the defendant company filed in the proper court its petition alleging that it was a corporation invested with the right of eminent domain: "that your petitioner, exercising the said power of eminent domain, has entered upon and located its tracks and lines of railway through" the tract of land, the title to which was then in the plaintiffs. After describing by courses and distances the location of the line, the petition further declared "that said property so taken is the property of J. L. Crider and Clara B. Crider, heirs at law of Joseph Crider, deceased." It prayed for the appointment of viewers and they were in due course appointed. Later on, by virtue of a stipulation of the parties, a view was dispensed with and the cause put down for trial as if on an appeal from their award under the provisions of the act of 1895. At the trial the defense rested chiefly on two legal propositions, to wit:

First: That the present plaintiffs could not recover anything for the reason that the entry of the company had been made in the lifetime of their predecessor in title, and that the right to recover the compensation for the entry and appropriation of the land vested in the then owner and did not pass to his heirs at law as an incident to the title to the real estate.

Second: That the evidence tending to establish the amount of the damages should relate not to the date of the giving of the bond but to the time of the actual entry upon the land.

1. It appears to be conceded in the briefs of counsel that in 1905 the father of the plaintiffs made a grant to a railway company of a right of way through his property, the exact location and width of which were described in the grant. At that time such companies were not invested with the right of eminent domain. The rights acquired by that company under its grant afterwards became legally vested in the present defendant company and the right to take private property for public use was conferred on such

companies by the Act of June 1, 1907, P. L. 368. When the present company, during the year 1907, began the construction of its line through the Crider property, it made a new location. The line as constructed was in part on the line embraced in the grant, but to a substantial extent, not precisely shown by the record before us, was on an entirely new location. As already stated, the owner of the land did not reside on it. The evidence does not disclose that it was occupied by any person as a tenant or otherwise. The record is silent as to any notice of any kind having been given to him of the new location or of any corporate action by the defendant preceding the work of construction. The death of the former owner occurred about the time the line was completed and opened for travel. The execution and delivery of the bond already referred to appear to have followed a claim for compensation advanced by the present plaintiffs upon their accession to the title.

Under these facts when was the land, occupied by the line as constructed, subjected to the permanent easement that results from the exercise of the right of eminent domain? Section 8 of article XVI of the constitution not only declares that just compensation must be made to the owner of private property taken for public use, but also that such "compensation shall be paid or secured before such taking, injury or destruction." Even if we were without the benefit of any authoritative construction of this section, the language quoted plainly declares that private property is not taken under the constitutional right until just compensation has either been paid or secured. So it was said in Fries v. Railroad Co., 85 Pa. 73: "This case differs from that of the Western Pennsylvania Railroad Co. v. Johnston, 59 Pa. 290. There the railroad company had neither paid the money nor given the bond required by the law as security, before entering on the land. The entry was therefore unlawful and the land remained liable to the re-entry of the owner. . . . It is argued that the principles of ownership

stated in Railroad Company v. Johnston ought to govern;
because the owner's right is protected by the constitution
and the law.  True, his right is thus protected, but not
from a taking with payment, in the exercise of the right of
eminent domain, even under the old constitution of 1790;
while the more recent constitutions have placed the power
to exercise the right of eminent domain upon the alterna-
tive also of security.  The security being given in due
course of law the grasp of the owner upon his property is
loosened by the constitution itself."  Had the owner of the
land, upon being apprised of the fact that the present com-
pany, without a grant, without the payment or tender of
any security, without any notice to him, had seized and
occupied a strip of his property, brought an action of eject-
ment to recover possession thereof, what legal defense to
such action could the defendant have offered?  We can
see none.  It may be true that if such action had been
brought and resulted in a judgment for the plaintiff, the
hands of the latter might have been stayed to permit
the corporation to do what it should have done before
its entry, to wit, to either pay or secure the just com-
pensation to the owner for his property taken or injured.
This, however, would be rather out of regard for the
public right and convenience than because of any legal
right possessed by the corporation.  When the former
owner died without having enforced his legal right to
recover the possession of his property that had been oc-
cupied by the defendant, the right, inhering in the title
to the land, passed with the title to the present plaintiffs.

The state of facts here presented differs in no essential
particular from that before the court in Graham v. Rail-
road Company, 145 Pa. 504.  It was there said: "For
redress of the injuries resulting from this invasion of the
plaintiff's rights, he had, of course, his remedy by an
action of trespass: Harrisburg Boro. v. Crangle, 3 W. & S.
460; McClinton v. Railway Co., 66 Pa. 404; Dimmick
v. Brodhead, 75 Pa. 464.  The effect of the subsequent
statutory proceeding to assess damages was to divest

the title as of the date of filing the bond. In the action of trespass, if one had been brought, the plaintiff would have been entitled to recover damages for the tortious entry, and for any injuries he suffered from that date until the title of the right of way was vested in the company, not as these injuries affected the value of the land, but the enjoyment of it; whereas, in the proceeding to assess damages under the statute, the measure of damages would be computed upon the value of the land, unaffected by the obstruction of the plaintiff's road, and its value as affected by it. . . . The assessment under the statute is for the price of a permanent right or privilege to be enjoyed in the future; but that price must be settled upon a consideration of the value of the land at the time of its lawful appropriation." This is the doctrine also of Shevalier v. Postal Telegraph Co., 22 Pa. Superior Ct. 506, wherein this court held, in an opinion delivered by our Brother MORRISON, reviewing many cases, that it was the filing of the bond by the corporation that deprived the owner of his land and took it for public use, and that as a consequence the resulting damages would accrue to the person who owned the land at the time the bond was filed. So in Fischer v. Railroad Co., 175 Pa. 554, it was declared that it was the bond filed by the corporation along with the statutory provisions for the assessment and collection of damages that were substituted in lieu of the land, and as a consequence that the remedy of the owner was confined to such proceedings: Hoffman's Appeal, 118 Pa. 512; Commonwealth v. Shaffer, 32 Pa. Superior Ct. 375.

Finally we have this proceeding begun by the petition of defendant praying for the appointment of viewers, in which are contained the averments already quoted. In Fischer v. Railroad, supra, the trial court held that the company was concluded by such averments, but it was permitted to withdraw its petition and bond after making affidavit they had been filed under a misapprehension of the facts, etc. This action was held to be

erroneous because "after the approval and filing of the bond defendants were in the actual and rightful possession of the land in question."

Under the facts before us then we are constrained to hold that the defendant company acquired no lawful right to that portion of the plaintiff's property occupied by its line and not within the limits of the earlier grant until its bond was tendered to and accepted by the plaintiffs. As a consequence they are the parties lawfully entitled to the compensation that represents the value of what was then taken from them. If this be true, it must further follow as a corollary that the damages should be assessed as of the date of the appropriation. This is the general rule, and we can discover nothing in the facts of this case that would bring it within the recognized exceptions to that rule. No evidence of any kind was offered, the legal effect of which would be to estop the landowner from the exercise of his ordinary rights. It is not shown that the seizure of his land outside the limits of the grant he had made was either with his knowledge or by his consent. Under existing circumstances he may have assumed that the company was confining its operations within the lines of the grant he had made. After a careful review of the entire record we are of the opinion that the case was well tried and the judgment entered in the court below should not be disturbed.

Judgment affirmed.