Commonwealth *v.* Bollinger, Appellant.

Argued December 14, 1961. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

Before SHADLE, J.

*Victor Dell'Alba,* with him *Bergdoll, Dell'Alba & Noll,* for appellant.

*Frank B. Boyle,* District Attorney, with him *Jesse L. Crabbs,* First Assistant District Attorney, for Commonwealth, appellee.

OPINION BY WRIGHT, J., March 21, 1962:

Clair L. Bollinger was brought to trial in the Court of Quarter Sessions of York County on five bills of indictment, each charging extortion in the first count and cheating by fraudulent pretenses in the second count. The trial covered a period of four days, and there is a voluminous record. In each case the jury returned a verdict of guilty on both counts. Motions by the defendant for a new trial and in arrest of judgment were overruled, and sentences were imposed. These appeals followed.

The record discloses that appellant was the duly authorized constable in and for the Borough of Spring Grove in York County. He was also licensed to conduct a private detective business under The Private

Detective Act,[1] and maintained an office at 54 South Beaver Street in the City of York. For over twenty-five years, William M. Nickey has been Alderman for the Sixth Ward of the City of York, maintaining an office at 249 East Poplar Street. By virtue of an arrangement with Nickey, appellant was called upon to serve a substantial portion, if not all, of the process originating in the alderman's office. Some of the work was performed by the appellant personally, and some by persons in appellant's employ. One such person was the Sixth Ward Constable, Harvey A. Stambaugh. Another such person was William A. Caffero, a duly appointed Deputy Sheriff in and for York County. Alderman Nickey had a large volume of business and employed two secretaries, Mildred G. Hunt and Eva M. Harlock. The appeals before us arise out of five criminal prosecutions originating in his office, as follows: Commonwealth v. Phillips, 239 January Sessions, 1959; Commonwealth v. Williams and Kirkland, 152 January Sessions, 1960; Commonwealth v. Leonard, Hickman and Mallory, 74 April Sessions, 1959; Commonwealth v. Dorsey, 163 April Sessions, 1959; Commonwealth v. Zinc, 112 April Sessions, 1959.

It was the theory of the Commonwealth that, in each of the aforesaid cases, appellant submitted bills of costs and received payment for services which he did not perform and to which payment he was not entitled; that this was done (1) wilfully and fraudulently by color of appellant's public office wherefore he was guilty of extortion; and (2) as a result of false pretenses by virtue of which appellant intended to cheat and defraud the County of York wherefore he was guilty of cheating by fraudulent pretenses. Appellant frankly admitted that, in large part, he had not performed the services personally. He also admitted that

---

[1] Act of August 21, 1953, P. L. 1273, 22 P.S. 11 et seq.

he signed the bills of costs in blank, and that they were subsequently filled in by one of the alderman's secretaries. His theory was that the services were performed by authorized persons acting under his direction, that the fees received were proper in amount, that in no instance was the County of York called upon to make double payment, and that he had no criminal intention for the reasons (a) that the practice which he followed was in accord with the custom which prevailed in York County, and (b) that he had sought advice in connection therewith from several public officials and had at no time been informed that the practice was improper.

We are clearly of the opinion that the instant convictions cannot be sustained because appellant was not permitted to offer testimony in support of his theory. The crimes of extortion and cheating by fraudulent pretenses are proscribed, respectively, by Sections 318 and 836 of The Penal Code[2] (18 P.S. 4318 and 4836). To convict of either crime, it is elementary that the Commonwealth must prove, not only an action, but also an intention. As to extortion, see *Commonwealth v. Gallagher*, 165 Pa. Superior Ct. 553, 69 A. 2d 432. As to cheating by fraudulent pretenses, see *Commonwealth v. Silia*, 194 Pa. Superior Ct. 291, 166 A. 2d 73. The essential element of crime, unless otherwise declared by statute, is the intent to commit it: *Commonwealth v. Junkin*, 170 Pa. 194, 32 A. 617.

Appellant vigorously denied that he had any criminal intention. He sought to prove that, following the appearance of an article in a local newspaper concerning the custom of one constable serving process and another constable receiving payment therefor, he twice requested of the district attorney "an interpretation and a ruling on this practice"; that he also consulted

---

[2] Act of June 24, 1939, P. L. 872, 18 P.S. §4101 et seq.

one of the judges; and that both he and Alderman Nickey asked an assistant district attorney "about the legality of such procedure". Appellant was not informed "why it couldn't be done", in fact the assistant district attorney said "something to the effect that, well, this isn't quite kosher but nothing will be done about it". The trial judge refused this offer of proof on the ground that "it never was and never can be a defense to any crime that other people also were violating the law". This is of course true, but it entirely overlooks the purpose of the offer. Appellant did not endeavor to prove the custom as a matter of excuse, but to show that he lacked the requisite criminal intent. A bona fide and reasonable belief in the existence of facts which, if they did exist, would render an act innocent, is a good defense: *Commonwealth v. Lefever*, 151 Pa. Superior Ct. 351, 30 A. 2d 364.

Appellant was also not permitted to show, with regard to signing bills of costs in blank, that this was the customary practice in the offices of aldermen in York County; and that, with regard to fees charged for mileage, he was complying with the customary practice in the office of the county controller. In our view this testimony was also relevant on the issue of criminal intention, and its exclusion was prejudicial error. "Where, as here, the Commonwealth officers have acted in conformity with a long established local custom, an individual may rest upon the assumption that he will not be covertly prosecuted by such officials for accepting the validity of such custom": *Commonwealth v. Wilson*, 158 Pa. Superior Ct. 198, 44 A. 2d 520.

Judgments reversed with a venire.

---

DISSENTING OPINION BY MONTGOMERY, J.:

I respectfully dissent in this case, first because of a procedural reason. The majority opinion is based en-

tirely upon a reason[1] that was not assigned as error in the court below as a basis for a new trial. It has been repeatedly said ". . . that a reason for a new trial not assigned as error in the court below may not be raised and will not be considered for the first time on appeal." *Enfield v. Stout,* 400 Pa. 6, (14), 161 A. 2d 22, (26). Appellant's motion included only the four customary reasons, viz., that the verdict was against the evidence, the weight of the evidence, the law, and that a demurrer should have been sustained; and a fifth reason which alleged "newly discovered evidence", but none was produced according to the opinion of the court en banc.

Secondly, I dissent because the appellant was *not* denied the right to prove that he was without a criminal intent in doing what he did. On the contrary, the court stated expressly, "You are entitled to show, if this is a fact, that this defendant thought he had the right to do whatever he did." Appellant contends that he was denied the right to offer testimony to show the practice being generally followed in York County, but I find the record as indicating otherwise. Appellant called as an early witness Harry Harkins, a newspaper writer, and offered to prove by him that he had written an article about constables in York County collecting fees for services performed by other constables in serving warrants. However, such a situation is different from the present one where appellant, as constable, collected fees for services performed by unauthorized persons. He, in fact, collected fees for services performed by police officers of the City of York who are not entitled to collect fees themselves, and for services performed by two other men employed by appellant to do the work of deputy constables without having them duly appointed as such.

---

[1] Refusal of an offer of testimony as to a custom or practice.

The law is express that a constable has no right to appoint a deputy unless that person meets certain qualifications and the appointment is approved by the Quarter Sessions Court. Act of April 15, 1834, P. L. 537, §113, as amended, 13 P.S. 22. There is no uncertainty about the meaning of this act that could possibly have led appellant to rely on any alleged practice in his county to the contrary. His contention as it relates to the services performed by the city police is less meritorious.

However, regardless of the fact that the practice about which Mr. Harkins wrote was different from that being followed by appellant, the testimony which appellant desired to offer and which was predicated upon this newspaper article was received in evidence. Appellant testified fully that following his reading of this article he went to the district attorney and to the judge of York County to secure advice on the practice that he was following. The learned trial judge ruled that he might do so (205a). "THE COURT: We will rule the defendant may testify, if this is a fact, that he did consult certain officials for the purpose of obtaining a ruling. We will not permit any reference to be made as to what those officials may have told him."

The verdicts established as factual that appellant did receive money from the County of York in payment of bills of costs, signed and sworn to by him, which certified that he had served certain warrants, had traveled a specified number of miles in making the service, and had committed certain prisoners to the county jail; they also established the fact that such services had not been performed by him, but on the contrary, had been performed either by the police of the City of York or by two men employed by appellant, namely, Stambaugh, who was engaged by appellant on a salary basis as an operative detective (although in fact Stambaugh was a constable in his own right in another ward

of the City of York), and Coffaro, a deputy sheriff. The verdict also established that it was appellant's practice to have the clerks in Alderman Nickey's office (out of which he worked) prepare the bills of costs upon which the county controller based the payments of fees, and in doing so to sign and swear to the bills in blank, leaving it to the clerks in the office to fill them in with charges for fees covering all services performed in all cases prepared for court regardless of whether the services were performed by appellant or someone else. It is also a fact that there was no duplication in the payment of fees by the County of York, since the city police, Stambaugh, as an operative detective, and Coffaro as a deputy sheriff, were not privileged to claim any.

It thus appears that appellant was conducting his office as a business rather than as a public trust. He illegally engaged people to perform constable services for him; he claimed all fees that were chargeable in all of the cases that emanated from Alderman Nickey's office; and from the fees, as he collected them, he paid his employes, either on a salary basis or on a partial fee basis, keeping for himself, of course, any fees that were for services earned by the police and any that he had earned himself and any that were left over after his payments to Stambaugh and Coffaro. In fact, the record of his check stubs discloses that he also made payments to Alderman Nickey of substantial amounts as salary or for services. However, he contended that his stubs were in error and that these payments were made in repayment of a loan of $3,000 which the alderman had made to him so that he could buy radio equipment which cost over $5,000. I find nothing in the record to indicate any offer on the part of appellant to establish a practice or custom in York County as business like or as extensive as the one followed by appellant.

I find no merit, either, in appellant's other contention that he was prejudiced by the court's refusal to allow him to show that it was the practice of the county controller and the County of York to ignore the fee bill applicable to the matter of mileage, in that he approved and it paid for four miles, when service was made within much shorter distances, as little as four blocks. It may be that the controller's office approved mileage for no less an amount than forty cents, but certainly there was no offer to show that any practice existed whereby a constable certified that he had traveled four miles, when, in fact, he had only traveled four blocks.

The last reason for my dissent is that there is no cause in this case to relax the rule that evidence is not admissible to prove a custom which is in violation of settled principles of law, or of public policy, or the express provisions of a statute. See *Commonwealth v. Ellis (No. 1)*, 46 Pa. Superior Ct. 72. I realize, however, that in some cases evidence that there was reliance on a custom or practice may be given to explain away criminal intent. *Commonwealth v. Trunk*, 311 Pa. 555, 167 A. 333 (not cited either by the majority or appellant). However, in that case it was thought by the defendants that their practice was in compliance with the law, and not directly in contravention of it, as in the present case.[2] Such was also the case of *Commonwealth v. Shaffer*, 32 Pa. Superior Ct. 375, cited by appellant.

I do not believe the cases cited by the majority in its opinion support the granting of an exception to the

---

[2] In *Commonwealth v. Trunk* the good faith of the public officers charged with the crime of false imprisonment was held to be for the jury since such officers are authorized by statute to arrest and detain persons for a period not to exceed forty-eight hours if found necessary in the performance of their duties. Act of April 23, 1909, P. L. 141, §1, 19 P.S. 4.

general rule in the present situation. In *Commonwealth v. Lefever*, 151 Pa. Superior Ct. 351, 30 A. 2d 364, there was a bona fide and reasonable, though erroneous, belief in the existence of certain facts, not law; and in *Commonwealth v. Wilson*, 158 Pa. Superior Ct. 198, 44 A. 2d 520, there was also a mistake of fact relating to the practice in the district attorney's office, viz., the issuance of a second subpoena for the trial of a case after the witness had appeared before the grand jury in response to the first subpoena.

Everyone, including a public officer, is presumed to know the law, particularly when it is express and certain as in the present case. The appellant was aware that what he was doing was not in accordance with the law in this case, otherwise he would not have gone to the district attorney and to the judge, and others, seeking advice as to whether or not to follow the law or continue the practice. However, as previously stated, he had the benefit of proving these facts in order to overcome any implication of criminal intent. The jury rejected his contention and convicted him.

Insofar as appellant's other contentions are concerned, in my opinion the record sufficiently supports the verdicts returned by the jury that he was guilty of both the crimes of extortion and receiving money by cheating and false pretenses.

Therefore, I would sustain the convictions and affirm the judgments of sentence.

ERVIN and FLOOD, JJ., join in this dissenting opinion.