J-S48002-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GISELE PARIS | |
| Appellant | No. 413 WDA 2015 |

Appeal from the Judgment of Sentence February 27, 2015
In the Court of Common Pleas of Allegheny  County
Criminal Division at No(s): CP-02-CR-0005727-2014

BEFORE:  BOWES, DUBOW AND MUSMANNO, JJ.

MEMORANDUM BY BOWES, J:                    **FILED DECEMBER 19, 2016**

Gisele Paris appeals from the judgment of sentence of three to six months of incarceration followed by eighteen months of probation imposed following her convictions for animal cruelty, theft by unlawful taking, and receipt of stolen property.  We affirm.

This case concerns the November 2013 theft and subsequent euthanization of Thor, a Siberian Husky owned by Mark Boehler.  N.T. Vol. I, 12/17-23/14, at 167.[1]  The Commonwealth established the following.  On November 26, 2013, a woman, who identified herself as Susan Elliot, called

_____

[1]  Appellant's jury trial took place between December 17th and December 26th of 2014.  The jury trial transcript encompasses two volumes and is consecutively paginated.

the Animal Friends Shelter, reporting an animal cruelty violation at Mr. Boehler's address. *Id*. at 106-07. A Humane Police Officer conducted an investigation on November 27, 2013, and, based upon his observations, closed the matter. *Id*.

Two days later, Mr. Boehler awoke, saw that Thor was missing, and called the police. *Id*. at 180. A Pittsburgh Police Officer observed that the fence had been cut. *Id*. at 197. Mr. Boehler reported the theft to Thor's veterinarians at Penn Animal Hospital. *Id*. at 182-83.

On November 29, 2013, Appellant brought Thor to the Animal Rescue League for placement. *Id*. at 208. The organization does not refuse any dog; however, a veterinarian assesses whether the dog is suitable for adoption. The assessment includes a variety of factors, including the dog's health, age, size, and behavior. N.T. Vol. II, 12/17-23/14, at 442, 449. If a dog is deemed non-adoptable, it will be euthanized. Thor was deemed non-adoptable due to his advanced age and a tumor on his perianal area, a region approximately six inches in circumference directly around the anus. However, the veterinarian opined that the tumor was treatable with surgical removal and castration. *Id*. at 449-52. Appellant was informed of the assessment, and she retrieved the dog.

On January 10, 2014, Appellant took Thor to Penn Animal Hospital. The receptionist consulted the hospital's records and saw Mr. Boehler's stolen animal report. Appellant became angry upon learning this news, and

told the receptionist that she obtained Thor from the Animal Rescue League. A staff veterinarian, Doctor Brandon Cohn, overheard the commotion and guided Appellant and Thor to an examination room. N.T. Vol. I, 12/17-23/14, at at 328. He noted the perianal tumor, and estimated a removal cost of $608.30. *Id*. at 326. He informed Appellant that the growth was curable and did not pose an immediate threat to Thor's health. *Id*. at 328. Appellant became upset and told Dr. Cohn she could not afford the treatment. *Id*. at 327. Dr. Cohn gave Appellant a prescription for some medication to give Thor. *Id*. at 328. Dr. Cohn, who had examined Thor in April of 2013, opined that the tumor had not dramatically changed in size. *Id*. at 319.

The staff let Appellant leave the premises and contacted Kathy Hecker, a Humane Society Police Officer. *Id*. at 333. She began an investigation and proceeded to Appellant's residence on January 22, 2014. Appellant was told that she was in possession of stolen property, and related that there would probably be a criminal investigation. *Id*. at 363-64. Appellant became belligerent and claimed to have adopted Thor from the Animal Rescue League. *Id*. at 364. Officer Hecker drove to Mr. Boehler's home to check the distance, and stated it was approximately one-half mile from Appellant's residence. *Id*. at 368. Officer Hecker also consulted the Animal Friends database for complaints, and examined the call from Susan Elliot

that occurred two days before Thor's disappearance. She observed that the phone number of Susan Elliot matched Appellant's phone number.

On February 11, 2014, Officer Hecker referred the matter to City of Pittsburgh Police Officer Christine Luffey, who specializes in animal cruelty cases. *Id*. at 399. On February 13, 2014, Officer Luffey spoke to Appellant, who claimed Thor was at the vet having surgery. Appellant declined to name the surgeon. *Id*. at 401.

On February 18, 2014, Officers Hecker and Luffey served an arrest warrant at Appellant's residence. *Id*. at 405. Appellant was seen walking away from her home. *Id*. at 407. Appellant refused commands to stop, and was eventually caught by Officer Luffey. *Id*. Appellant started screaming, threw herself on the ground, struggled with Officer Luffey, and kicked her several times. *Id*. at 408-09.

The authorities soon learned Thor had been euthanized. A veterinarian who administers euthanasia at owners' homes testified that she had euthanized Thor at Appellant's home on February 10, 2014. Appellant told Dr. Griffin that Thor was in pain and signed a form professing ownership of Thor. *Id*. at 482.

Appellant was charged in this matter with one count each of animal cruelty, theft by unlawful taking, and receipt of stolen property at criminal number CP-02-CR-05727-2014 for the death of Thor. Appellant was separately charged at CP-02-CR-05753-2014 with simple assault and

resisting arrest. The Commonwealth filed a motion to consolidate these cases for trial, which was denied following Appellant's objection.

This case proceeded to jury trial on December 17, 2014. The jury returned a verdict of guilty at all counts on December 26, 2014, and sentencing was deferred. Appellant was thereafter sentenced on February 27, 2015.

Appellant and the trial court complied with Pa.R.A.P. 1925 and the matter is ready for our review. Appellant raises three issues for our consideration.

> I. Whether the trial court erred in not responding to a jury question where said question went to an element of cruelty of animals and there was a clear answer to give?
>
> II. Whether the trial court erred in not instructing the jury regarding mistake or ignorance of fact?
>
> III. Whether the trial court erred in admitting evidence of Appellant's behavior while being arrested for the crimes involved in this case?

Appellant's brief at 5.

Preliminarily, we note that the first two claims concern the animal cruelty statute, which reads in relevant part:

> **(a) Killing, maiming or poisoning domestic animals or zoo animals, etc.--**
>
> . . . .
>
> > (2.1) (i) A person commits a misdemeanor of the first degree if he willfully and maliciously:

> (A) Kills . . . any dog or cat, whether belonging to himself or otherwise . . . .
>
> . . . .
>
> (iii) The killing of a dog or cat by the owner of that animal is not malicious if it is accomplished in accordance with the act of December 22, 1983 (P.L. 303, No. 83), referred to as the Animal Destruction Method Authorization Law.

18 Pa.C.S. § 5511 (footnote omitted).

Appellant's first issue concerns her argument that "maliciously" applied only to the act of killing, while the Commonwealth averred that the entire course of conduct could be considered. Both parties submitted proposed instructions and argued their respective positions in closing. The judge elected to issue an instruction which tracked the statutory elements and contained a general definition of malicious conduct. N.T. Vol. II, 12/17-23/14, at 805-06. The jurors were provided written copies of the instructions. *Id*.

The court thereafter received a question from the jury asking, "As to the charge of Animal Cruelty, does, 'malicious,' apply to the animal, a killing, or the people involved?" *Id*. at 832 (quotation marks substituted). Appellant objected to the court's decision to direct the jury to refer to the previous instruction. She asked that the court tell the jury that "[T]he Commonwealth must prove that [Appellant] willfully and maliciously killed the dog." *Id*. at 840. The judge declined Appellant's request and answered the question by stating, "I've read to you and given you [i]nstructions as to

the [a]nimal [c]ruelty [s]tatute. Those [i]nstructions cover the question."

*Id*. at 847. We apply the following standard of review to jury instructions.

> "When a court instructs the jury, the objective is to explain to the jury how it should approach its task and the factors it should consider in reaching its verdict." ***Commonwealth v. Hartman***, 536 Pa. 211, 638 A.2d 968, 971 (1994). Instructions on defenses or theories of prosecution are warranted when there is evidence to support such instructions. ***Commonwealth v. Browdie***, 543 Pa. 337, 671 A.2d 668, 674 (1996) (citing cases). "In examining jury instructions, our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law controlling the outcome of the case." ***Von der Heide v. Com., Dep't of Transp.***, 553 Pa. 120, 718 A.2d 286, 288 (1998). A charge will be found adequate unless the issues are not made clear, the jury was misled by the instructions, or there was an omission from the charge amounting to a fundamental error.

***Commonwealth v. Chambers***, 980 A.2d 35, 49-50 (Pa. 2009).

Furthermore:

> It is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.

***Commonwealth v. Leonberger***, 932 A.2d 218, 224-25 (Pa.Super. 2007) (quoting ***Commonwealth v. Kerrigan***, 920 A.2d 190, 198 (Pa.Super.2007)).

Appellant's first claim is that the court erred in not specifically instructing the jury, in response to the question, that willfully and maliciously applies to the actual act of killing. This argument proceeds from

the notion that her interpretation that the maliciousness must inhere in the actual act of killing is correct. However, Appellant cites no case interpreting the statute in that manner.

We apply an abuse of discretion standard to a trial court's decision to issue supplemental instructions. As we explained in **Commonwealth v. Davalos**, 779 A.2d 1190 (Pa.Super. 2011):

> The scope of supplemental instructions given in response to a jury's request rests within the sound discretion of the trial judge. There may be situations in which a trial judge may decline to answer questions put by the jury, but where a jury returns on its own motion indicating confusion, the court has the duty to give such additional instructions on the law as the court may think necessary to clarify the jury's doubt or confusion.

**Id**. at 1195.

Appellant relies upon **Reilly v. Poach**, 323 A.2d 50 (Pa.Super. 1974) (*en banc*), a civil case which Appellant states reflects the "somewhat established law regarding this issue." Appellant's brief at 40. **Reilly** is clearly inapposite. We found error when the trial court declined to answer a question from the jury regarding the definition of emergency situations regarding sudden stops on a roadway. **Id**. at 51. The trial court told the jury to find the facts and apply the facts to the law that was orally recited in charging. **Id**. **Reilly** held this was erroneous, because each element of the rule was stated only once. **Id**. Thus, it is apparent the error in **Reilly** was not that the trial court refused to explicitly explain the law when questioned

by the jury, but rather that the jury was left to rely on its own memory of the law.

In this regard, Appellant fails to recognize that **Reilly** observed, "It would have been sufficient simply to repeat the [relevant] portions of the original charge." **Id**. at 52. The trial court did precisely that by directing the jury to follow their written instructions, which set forth the elements of the crime and supplied a definition of malice. Hence, the jury was not misled and the court did not abuse its discretion.

Appellant's second issue attacks the trial court's refusal to issue her proposed instruction that "Appellant was reasonably mistaken concerning the facts in that she believed that Thor was in pain or dying." Defendant's Final Proposed Jury Instructions, 12/23/14, at 16. Appellant objected to the failure to give this instruction, preserving the issue for our review.[2] N.T. Vol. II, 12/17-23/14, at 825. **See Commonwealth v. Pressley**, 887 A.2d 220 (Pa. 2005).

Appellant's proffered instruction sought to invoke the defense of mistake of fact. Where a defense to a crime is at issue, the trial court

> may not refuse to instruct the jury regarding the defense if it is supported by evidence in the record. When there is evidence to support the defense, it is for the trier of fact to pass upon that

---

[2] Following the issuance of all instructions, Appellant took exception to the court's failure to issue the proposed instruction.

evidence and improper for the trial judge to exclude such consideration by refusing the charge.

***Commonwealth v. Clouser***, 998 A.2d 656, 658 (Pa.Super. 2010). The defense of mistake of fact is codified as follows:

> Ignorance or mistake as to a matter of fact, for which there is reasonable explanation or excuse, is a defense if:
>
> > (1) the ignorance or mistake negatives the intent, knowledge, belief, recklessness, or negligence required to establish a material element of the offense; or
> >
> > (2) the law provides that the state of mind established by such ignorance or mistake constitutes a defense.

18 Pa.C.S. § 304. In ***Commonwealth v. Scott***, 73 A.3d 599 (Pa.Super. 2013), we described the mistake of fact defense as follows:

> It is well established that a *bona fide*, reasonable mistake of fact may, under certain circumstances, negate the element of criminal intent. 18 Pa.C.S.A. § 304 (providing, inter alia, that ignorance or mistake as to a matter of fact, for which there is a reasonable explanation or excuse, is a defense if "the ignorance or mistake negatives the intent, knowledge, recklessness, or negligence required to establish a material element of the offense"); ***Commonwealth v. Compel***, 236 Pa.Super. 404, 344 A.2d 701 (1975); ***Commonwealth v. Bollinger***, 197 Pa.Super. 492, 179 A.2d 253, 255 (1962). "It is not necessary that the facts be as the actor believed them to be; it is only necessary that he have 'a bona fide and reasonable belief in the existence of facts which, if they did exist, would render an act innocent.' ***Commonwealth v. Lefever***, 151 Pa.Super. 351, 30 A.2d 364, 365 (1943).

***Id***. at 603 (citing ***Commonwealth v. Hamilton***, 766 A.2d 874, 878-79 (Pa.Super. 2011)).

- 10 -

The trial court declined to issue the instruction by finding Appellant failed to meet the threshold inquiry of a *bona fide* reasonable mistake of fact. The court observed that Appellant failed to demonstrate that her mistake of belief was reasonable because the evidence established she was told in January by Dr. Cohn that the dog's tumor was treatable and she was aware the owner wanted the dog back. Appellant claims that the trial court misapplied the law by casting the facts in the light most favorable to the Commonwealth and ignored other facts establishing a *bona fide* belief that Thor was seriously ill.

We find Appellant is not entitled to relief, albeit on a different ground. ***Commonwealth v. Reese***, 31 A.3d 708, 727 (Pa.Super. 2011) (*en banc*) (appellate court may affirm on any basis supported by record if decision is correct). The trial court's rationale suggests that, if Appellant was in fact told by Dr. Cohn that Thor was gravely ill (or, more accurately, reasonably believed that he was gravely ill), she would be legally entitled to euthanize Thor even though she knew the owner wanted Thor back.[3] This is because the mistake of fact doctrine applies only if the existence of the disputed fact renders the act innocent or negates the intent.

---

[3] To take that logic further, any individual could steal an owner's dog or cat, have it euthanized, and be immune from prosecution provided the actor reasonably believes the dog or cat was in pain or dying.

We do not agree. Appellant has failed to establish that her belief regarding the dog's health would in fact render the act innocent or negate the *mens rea* of malice. Appellant's argument is little more than an attempt to establish that she was lawfully entitled to euthanize Thor, provided that she reasonably believed the dog was seriously ill. Yet nothing in the statute leads to that result. Notably, under the section Appellant was found guilty, the statute creates a statutory exception that applies to the **owner** of the animal:

> (iii) The killing of a dog or cat **by the owner** of that animal **is not malicious** if it is accomplished in accordance with the act of December 22, 1983 (P.L. 303, No. 83), referred to as the Animal Destruction Method Authorization Law.

18 Pa.C.S. § 5511(a)(2.1)(iii) (footnote omitted, emphases added). Thus, this provision serves to negate the element of maliciousness only if the owner of an animal destroys it in accordance with the Animal Destruction Method Authorization Law, which references euthanizations complying with the American Veterinary Medical Association's Guidelines on Euthanasia. 3 P.S. § 328.302. This implicitly establishes that the owner's failure to follow that law could still be malicious. More importantly, this provision does not extend beyond the owner of the animal.

We therefore find the trial court did not err in refusing this instruction. Since Appellant has failed to establish that the asserted mistake of fact would negate the *mens rea* of maliciousness, we find no abuse of discretion.

- 12 -

*Cf. Commonwealth v. Cottam*, 616 A.2d 988 (Pa.Super. 1992) (parents convicted of, *inter alia*, third-degree homicide of their fourteen-year-old son could not rely on belief that prayer alone would save their son as mistake of fact defense to negate malice).

Appellant's final claim implicates the propriety of introducing evidence of her behavior when she was arrested by the police. We review such evidence under the following well-settled standard.

> The admissibility of evidence is a matter for the discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of discretion. *Commonwealth v. Sherwood*, 603 Pa. 92, 982 A.2d 483, 495 (2009). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Id.* (quoting *Commonwealth v. Dillon*, 592 Pa. 351, 925 A.2d 131, 136 (2007) (citation omitted)).

*Commonwealth v. Poplawski*, 130 A.3d 697, 716 (Pa. 2015).

As set forth *supra*, Appellant was separately charged with two counts of simple assault and resisting arrest for her actions the day of her arrest. The Commonwealth moved to try both cases together. Appellant objected, and the trial court denied the motion.

At trial, the Commonwealth sought to introduce evidence of Appellant's conduct, on the theory such evidence was consistent with maliciousness and indifference to the consequences of her own actions. The judge permitted this evidence over Appellant's objection that it was unduly

prejudicial. Appellant reasons that it is inconsistent, and therefore an abuse of discretion, to bar the Commonwealth from prosecuting Appellant for resisting arrest and simple arrest on prejudice grounds, but nevertheless overrule an objection seeking to exclude the underlying conduct as unduly prejudicial.

We disagree. The trial court cogently described the distinction between charges and conduct.

> The officer will not be permitted to go further and say, I, therefore, arrested her for resisting arrest, or her conduct amounted to resisting arrest. That's too far. You objected to the case being joined. I granted your objection. I did not join it. So they can't go that far; but they can certainly describe the conduct.
>
> I mean, Mr. Mielnicki, they could have not charged your client at all with resisting arrest. The conduct is still relevant to what happened at the time of the arrest.

N.T. Vol. I, 12/17/14 – 12/23/14, at 161.

We find the court did not abuse its discretion. It is not inconsistent to hold that permitting the **prosecution** of Appellant on the simple assault and resisting arrest charges would be unduly prejudicial, while simultaneously ruling that the introduction of the conduct itself is admissible as part of the *res gestae*. Our Supreme Court has observed that a trial court is not "required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses[.]"

***Commonwealth v. Paddy***, 800 A.2d 294, 308 (Pa. 2002) (quoting ***Commonwealth v. Lark***, 543 A.2d 491, 501 (Pa. 1988)).

The trial court clearly stated its position that the prejudice inhered in trying Appellant on both sets of charges, not that the conduct itself was prejudicial. This ruling is in accord with our *res gestae* precedents and is not an abuse of discretion.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/19/2016